## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

BENIHANA OF TOKYO, INC.   )
    Plaintiff,      )
           )
vs.            )   C.A. No.: 10-1051 SLR
           )
BENIHANA, INC.      )
and           )
NOODLE TIME, INC.,     )
    Defendants.     )

### OPENING BRIEF IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Robert W. Whetzel (#2288)
Whetzel@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
*Attorney for Defendants*

Of Counsel:
Janet Moreira Gamble (#0597090)
Alan H. Fein (#288349)
STEARNS   WEAVER   MILLER   WEISLER
ALHADEFF & SITTERSON, P.A.
Suite 2200, Museum Tower
150 West Flagler Street
Miami, Florida 33130
(305) 789-3200

February 4, 2011

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ..................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

    I.     LEGAL STANDARD – FAILURE TO STATE A CLAIM ..................................... 4

    II.    BREACH OF CONTRACT .......................................................................................... 5

          A.    There is No Dispute Regarding the Existence of the ARA ............................ 6

          B.    BOT Fails to Allege Facts In Support of its Own Performance ..................... 6

          C.    Benihana Has Not Breached the ARA ........................................................... 6

          D.    Resulting Damage .......................................................................................... 9

          E.    Conclusion ..................................................................................................... 9

    III.   Specific Performance ................................................................................................... 9

    IV.   Conversion .................................................................................................................. 10

    V.    FALSE DESIGNATION OF ORIGIN ...................................................................... 12

          A.    False Designation of Origin .......................................................................... 13

          B.    False Advertising .......................................................................................... 15

          C.    Conclusion ................................................................................................... 16

    VI.   Infringement in Singapore and Vietnam ................................................................... 16

    VII.  Declaratory Judgment ................................................................................................ 17

CONCLUSION ...................................................................................................................... 19

### TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    556 U.S. ____, 129 S. Ct. 1937 (2009)....................................................................4, 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................................................5

*Benihana of Tokyo, Inc. v. Benihana Inc.,*
    2005 WL 575615 (Del. Ch. Dec. 8, 2005).................................................................3

*Brass Constr. v. Muller,*
    2001 WL 1131986 (S.D.N.Y. Sep. 25, 2001)..........................................................13

*Briarpatch Ltd. v. Geisler Roberdeau, Inc.,*
    148 F.Supp.2d 321 (S.D.N.Y. 2001).......................................................................11

*Cont'l Cas. Co, v. Coastal Sav. Bank,*
    977 F.2d 734 (2d. Cir. 1992)...................................................................................18

*Crowley v. VisionMaker, LLC,*
    512 F.Supp.2d 144 (S.D.N.Y. 2007).........................................................................6

*E.F. Prichard Co. v. Consumers Brewing Co.,*
    136 F.2d 512 (6th Cir. 1943) ..................................................................................13

*Freund v. Lerner,*
    2010 WL 3156037 (S.D.N.Y. Aug. 10, 2010)..........................................................5

*Frink Am., Inc. v. Champion Road Mach., Ltd.,*
    62 F.Supp.2d 679 (N.D.N.Y. 1999).........................................................................11

*Golden Gulf Corp. v. Jordache Enters., Inc.,*
    896 F.Supp. 337 (S.D.N.Y. 1995) ..........................................................................18

*Ironforge.com v. Paychex, Inc.,*
    2010 WL 3911419 (W.D.N.Y. Oct. 5, 2010) ..........................................................11

*Island Rehabilitative Services Corp. v. Maimonides Medical Ctr.,*
    859 N.Y.S.2d 903 (N.Y. Sup. 2008).......................................................................10

*Jenkins v. U.S.,*
    386 F.3d 415 (2d Cir. 2004).....................................................................................18

*Lefkowitz v. Bank of New York,*
    676 F.Supp.2d 229 (S.D.N.Y. 2009)......................................................................10

*Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.,*
    702 F.Supp.2d 104 (E.D.N.Y. 2010) ...................................................................13

*Picture People, Inc. v. Imaging Fin. Servs., Inc.,*
    2010 WL 3238977 (S.D.N.Y. Aug. 16, 2010) .......................................................11

*Rare Earth, Inc. v. Hoorelbeke,*
    401 F. Supp. 26 (S.D.N.Y. 1975) ........................................................................13

*Stadt v. Fox News Network, LLC,*
    719 F.Supp.2d 312 (S.D.N.Y. 2010).....................................................................11

*Starter Corp. v. Converse, Inc.,*
    84 F.3d 592 (2d Cir. 1996) ...................................................................................18

*Tiffany (NJ), Inc. v. eBay Inc.,*
    600 F.3d 93 (2d Cir. 2010) ...................................................................................15

*Two Pesos Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992)..............................................................................................13

*W.B. David & Co. v. DWA Commc'ns, Inc.,*
    2004 WL 369147 (S.D.N.Y. Feb. 26, 2004)..........................................................11

*Wolff v. Rare Medium, Inc.,*
    171 F.Supp.2d 354 (S.D.N.Y 2001).......................................................................6

**STATUTES & RULES**

15 U.S.C. § 1125(a)(1)...................................................................................................15

15 U.S.C. § 1127............................................................................................................8

28 U.S.C. § 2201(a) .....................................................................................................17

Fed. R. Civ. P. 8(a)(2)....................................................................................................4

Fed.R.Civ.P. 12(b)(6).....................................................................................................5

**OTHER AUTHORITIES**

*Edward J. Fennessy, Trademarks Throughout the World,* § 144:21 (2010) ...........................16, 17

*J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition* ("*McCarthy*")
    § 29:1 (4th ed. 2010)..........................................................................................7

RLF1 3797990v. 1

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Benihana of Tokyo, Inc. ("BOT") filed its Amended Complaint in this Court on December 7, 2010 asserting claims against Defendants Benihana Inc. and Noodle Time, Inc. (collectively, "Benihana") relating to the BENIHANA name, trademark and service mark and a series of agreements entered into between BOT and Benihana. In response, Benihana, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully requests that this Court enter an order dismissing, in its entirety, the Amended Complaint filed by BOT.

## SUMMARY OF ARGUMENT

1.      Despite numerous, conclusive allegations set forth within the Amended Complaint, BOT does not state any set of facts sufficient to state its claims under the Federal Rules of Civil Procedure. As discussed in greater detail in the following sections, the agreements at issue are clear and unambiguous in that they do not restrict or prevent Benihana from seeking to register the BENIHANA trademarks anywhere and do not reserve any specific territory to BOT. More importantly, Benihana has not used the BENIHANA trademarks in violation of the parties' agreements or any right that BOT may have to its trademarks.

2.      Any issue with respect to Benihana's International Registration for the BENIHANA trademark, Registration No. 1048205 is moot since Benihana filed a Request for the Recording of a Renunciation voluntarily denouncing protection in countries of Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam, and Zambia (collectively the "Disputed Countries").

3.      For these reasons and as more fully described in this memorandum, this Court should dismiss BOT's Amended Complaint in its entirety for failure to state a claim.

1

## STATEMENT OF FACTS

This story begins with Rocky Aoki, founder of BOT. In 1964, Mr. Aoki opened his first Japanese teppanyaki steakhouse called "Benihana" in New York. The BENIHANA concept rapidly gained popularity and by 1972, the company owned, operated, or licensed approximately 18 restaurants, grossing $12 million in 1972 alone. Several years later, Mr. Aoki formed Benihana National Corporation ("BNC") and took that company public as a way to raise capital and pay off a debt incurred from BOT's contested split from its restaurant management company.

Despite the new corporate structure, Mr. Aoki remained in control, serving as Chairman of both BOT and BNC, retaining 51% of the common stock in BNC, and keeping about 30 restaurants in the privately-held BOT.

In a later attempt to raise additional capital, BNC announced that it would acquire BOT's United States operations and rights to BOT's trademarks. Defendant Benihana Inc. was formed and through a merger, acquired BNC in 1995. Mr. Aoki continued to serve as Chairman of Benihana Inc. Several documents comprised the 1995 transaction: (i) the Amended and Restated Agreement and Plan of Reorganization ("ARA") (Gamble Decl., Ex. 1[1]); (ii) the Assignment of Trademarks, dated May 15, 1995 (Gamble Decl., Ex. 2); and (iii) the License Agreement, dated May 15, 1995 (collectively the "1995 Agreements")

The cumulative effect of the 1995 Agreements was to: (i) dilute the Aoki family's ownership of Benihana (to approximately 38%); (ii) divide the ownership of the BENIHANA Trademarks (as defined in the 1995 Agreements[2]) between Benihana and BOT; and (iii) grant

---

[1] "Gamble Decl." refers to the Declaration of Janet Moreira Gamble in Support of Defendants' Motion to Dismiss Amended Complaint, filed contemporaneously herewith.

[2] Section 1.01 of the ARA. That provision states:

2

BOT a limited license to use the BENIHANA Trademarks in connection with a single restaurant location in Hawaii. The dilution of the Aoki legacy began to instill resentment and tension between BOT and Benihana.[3]

The ARA clearly states that, from the "Effective Time," Benihana owned the BENIHANA Trademarks in the "Territory" (defined as the United States, South America, Central America, and the islands of the Caribbean) and BOT would *"continue to own"* the BENIHANA Trademarks it owned outside of the Territory. The language of the 1995 Agreements, including the ARA, is clear. Nothing in the ARA restricts Benihana's ability to register the BENIHANA Trademarks outside of its defined Territory, particularly when doing so protects the BENIHANA Trademarks in territories where they are susceptible to misuse.[4]

The only trademark-related restriction in the ARA prevents either party from *"making use"* of the BENIHANA Trademarks in a manner reasonably expected to reduce the value or usefulness of the BENIHANA Trademarks to the other. As discussed below, as a matter of law, Benihana has not made any use of the BENIHANA Trademarks in Disputed Countries, much less any use reasonably expected to reduce the value or usefulness of the BENIHANA

---

> BOT agrees to sell, transfer and assign to Benihana … all of BOT's right, title and interest in and to all assets (the "Assets") of BOT specifically related to the restaurants…including, without limitation the following:
>
> …
>
> (d) each of the trademarks and servicemarks (the "Trademarks") listed on Schedule 1.01(d) to the extent applicable to the United States (including its territories and possessions), Central America, South America, and the islands of Caribbean sea (the "Territory"), including all goodwill related thereto;
>
> …

[3] This resentment later materialized in a lawsuit titled *Benihana of Tokyo, Inc. v. Benihana Inc.,* 2005 WL 575615 (Del. Ch. Dec. 8, 2005).

[4] Benihana was not aware of BOT's existing registrations in Singapore and Vietnam at the time of filing its International Registration. As discussed below, Benihana has taken steps to renounce the International Registration in those countries.

3

Trademarks to BOT.  Benihana has also voluntarily filed a request for renunciation with the International Bureau ("IB") of the World Intellectual Property Organization ("WIPO") to denounce protection in the Disputed Countries as it relates to its International Registration.[5]  *See* Gamble Decl., Ex. 3 and 6.

## ARGUMENT

BOT's Amended Complaint fails to allege any claim against Benihana, fails to allege breach of the ARA, fails to allege any damage to BOT, and is mooted by Benihana's renouncing of its International Registration in the Disputed Countries.  Accordingly, for the reasons set forth herein, BOT's Amended Complaint should be dismissed.

## I.     LEGAL STANDARD – FAILURE TO STATE A CLAIM

To properly state a claim, the Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This requires more than a simple regurgitation of the elements of a cause of action.   Plaintiff must provide the grounds for its entitlement to relief with sufficient factual details, which when accepted as true, nudge its claims "across the line from conceivable to plausible."  *Ashcroft v.*

---

[5] Benihana's International Registration for BENIHANA, Registration No. 1048205, resulted from an international application filed pursuant to the Protocol Relating to the Madrid Agreement Concerning the International Registration of Mark ("Madrid Protocol").  The Madrid Protocol is an international treaty that allows a trademark owner to seek registration in signatory countries by filing a single application, called an international application.  Once the IB registers the mark, it will notify each country designated in the international registration of the request for protection in that country.  Each designated country will examine the request the same as it would a national application under its laws. If the registration meets the requirements of that country, then the country will grant protection of the mark.  A country has 18 months from the IB's registration to notify the IB of any refusal.  As of the date of filing this Motion, Benihana's International Registration No. 1048205 is still susceptible to refusal by any of the Disputed Countries.  Regardless, Benihana's request for renunciation will have the effect of voluntarily abandoning the effects of International Registration 1048205 with respect to the Disputed Countries, thereby mooting BOT's claims on the basis of International Registration 1048205.

4

*Iqbal,* 556 U.S. ____, 129 S. Ct. 1937, 1951 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

570 (2007).   As the United States Supreme Court explained:

> The plausibility standard is not akin to a "probability requirement", but it asks for
> more than a sheer possibility that a defendant has acted unlawfully. Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of entitlement to
> relief".

*Ashcroft,* 556 U.S. at 1949 (quoting *Twombly,* 550 U.S. at 557).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss lies for

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   A court

may consider "any written instrument attached to [the complaint] as an exhibit, materials

incorporated in it by reference, and documents that, although not incorporated by reference, are

'integral' to the complaint." *Freund v. Lerner,* 2010 WL 3156037, *5 (S.D.N.Y. Aug. 10, 2010)

citing *Sira v. Morton,* 380 F.3d 57, 67 (2d. Cir. 2004).

Despite BOT's numerous, conclusive allegations, BOT does not state any set of facts in

support of its claims.   Accordingly, the Amended Complaint is improper under the Federal Rules

of Civil Procedure, and should be dismissed.

## II.   BREACH OF CONTRACT

In order to sufficiently allege a claim for breach of contract under New York law[6], BOT

must allege: (i) the existence of a contract; (ii) performance by BOT; (iii) Benihana's failure to

---

[6] The ARA, at Section 10.06, states:
> This Agreement shall be governed by and construed in accordance with the law of
> the State of New York, regardless of the laws that might otherwise govern under
> applicable principles of conflicts of laws, provided, however, that the
> consummation and effectiveness of the Merger shall be governed and construed
> with the laws of the GCL.

For purposes of this brief, we presume that Section 10.06 validly and effectively binds the parties
to New York law for purposes of the Agreement and any disputes relating thereto.

5

perform; and (iv) resulting damage. *Crowley v. VisionMaker, LLC,* 512 F.Supp.2d 144 (S.D.N.Y. 2007); *Wolff v. Rare Medium, Inc.,* 171 F.Supp.2d 354, 357, 358 (S.D.N.Y 2001).

A.    **There is No Dispute Regarding the Existence of the ARA**

Benihana does not dispute the existence of the ARA, the 1995 Agreements, the definition of "Territory," or the definition of "Assets." (D.I. 6 ¶¶ 8-10 and 61-62). Benihana submits that it is the sum of the 1995 Agreements that governs the BOT-Benihana relationship as related to this matter.

B.    **BOT Fails to Allege Facts In Support of its Own Performance**

In support of the second element of its breach of contract claim, BOT fails to allege that it has performed its obligations under the ARA. *See* D.I. 6, generally.    For this reason alone, BOT's breach of contract claim should be dismissed.

C.    **Benihana Has Not Breached the ARA**

In support of the third element of its claim, BOT alleges that Benihana breached Section 1.01(d) and Section 7.10 (D.I. 6 ¶¶ 10-11) of the ARA by 'using' the BENIHANA trademark and claiming ownership in geographic territories reserved exclusively to BOT, namely, the Disputed Countries (*Id.* ¶ 29). BOT claims that Benihana is prohibited from making any use of the BENIHANA trademark which could reasonably be expected to reduce the value of the mark to BOT, without BOT's consent. *Id.* ¶ 13. Finally, BOT claims Benihana is prohibited from filing applications to register the BENIHANA trademark in any country outside of the Territory and that such right is reserved to BOT. *Id.* ¶ 14.

BOT's allegations, however, do not align with the express and clear language of the ARA. *See Crowley,* 512 F.Supp.2d at 152 ("In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use, and thus the court 'ordinarily looks only at the wording used by the drafters who

presumably understood what they intended.'" (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 426, 428 (2d Cir. 1992)).  The language of Section 7.10 of the ARA is clear and unambiguous.  It states:

> Section 7.10 <u>Trademarks</u>.  Each of BOT and Benihana acknowledge that, from and after the Effective Time, Benihana will own the Trademarks in the Territory and BOT will continue to own the Trademarks outside of the Territory. Accordingly, each of BOT and Benihana agree that, without the prior written consent of the other, neither *will make any use of* the Trademarks which could reasonably be expected to reduce the value or usefulness of the Trademarks to the other party.  In addition, each of BOT and Benihana shall be responsible for the proper registration and maintenance of the Trademarks and the prosecution of infringements or potential infringements of the Trademarks in the territories where such party has an interest in the Trademarks. Each of BOT and Benihana agrees to notify the other promptly of any infringement or potential infringement of the Trademarks of which such party becomes aware and to cooperate with the other party in any action taken to prosecute any such infringement.   The obligations of this Section shall survive the Closing for an indefinite period.

D.I. 6 ¶ 11 (emphasis added).  The ARA does not reserve any rights to BOT, including, the right to file applications to register the BENIHANA trademark outside of the Territory. This becomes particularly clear in the context of certain terms of art implied or referenced in Section 7.10, namely, the concept of territoriality and the meanings of ownership and use.

The concept of territoriality is what allows BOT and Benihana to own the same mark in various parts of the world.  Under this doctrine, a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark.  *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition* ("*McCarthy*") § 29:1 (4th ed. 2010).

The ARA states that the parties acknowledge that "BOT will continue to own the [BENIHANA] Trademarks outside of the Territory."   In the United States, the basic rule of ownership is priority of use. *McCarthy* § 16:1.   However, in most civil law nations, the rule is that ownership and priority go to the party who was first to file an application. *Id.*  Bearing in

7

mind this concept of ownership, the only way that BOT could "continue to own" the

BENIHANA Trademarks outside of the Territory is, as of the Effective Time, to then own valid

pending applications or registrations for the marks.   In essence, the ARA states that Benihana

would own the BENIHANA Trademarks in the Territory (which were contemporaneously

assigned by BOT) and BOT would continue to own its applications or registrations for the

BENIHANA Trademarks, filed or registered as of the Effective Time, in the countries not

assigned to Benihana.[7] *See* Gamble Decl., Ex. 1 and 2.

Section 7.10 of the ARA further states that "neither [party] will make any use of the

[BENIHANA] Trademarks which could reasonably be expected to reduce the value or usefulness

of the [BENIHANA] Trademarks to the other party." *See* Gamble Decl., Ex. 1.  "Use" is a term

of art and an abbreviation of the phrase "use in commerce," defined in the Lanham Act, 15

U.S.C. § 1127 as:

> ...the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in the mark.  For purposes of this chapter, a mark shall be deemed to be in use in commerce-
> (1) on goods when –
>     (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>     (B) the goods are sold or transported in commerce, and
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

---

[7] Singapore and Vietnam may be the only Disputed Countries in which BOT could claim ownership of the BENIHANA trademarks as of the Effective Time of the ARA.  BOT failed to attach its certificates of registration to the Amended Complaint.  However, as discussed in the preceding sections, Benihana immediately rectified its error, if any, and immediately withdrew the Disputed Countries from its International Registration. *See* Gamble Decl., Ex. 3.

BOT does not and cannot point to a single example of Benihana's alleged "use" of the BENIHANA Trademarks because there has been no such use. *See* D.I. 6, generally. Benihana's international application to register the BENIHANA trademark in the Disputed Countries, even if considered a preliminary step to do business, is not actionable "use." The type of "use" contemplated by the ARA requires that Benihana advertise or promote its restaurant services and/or be ready and open for business. Moreover, Benihana's alleged conduct could not have been "reasonably expected to diminish the value and usefulness of the [BENIHANA] Trademarks" to BOT. In point of fact, Benihana's actions likely increased the value and usefulness of the BENIHANA Trademarks to Benihana and BOT by preventing third parties from registering and misusing the BENIHANA Trademarks.

For the reasons discussed herein, BOT's allegations fail to support the third element of BOT's breach of contract claim.

### D.      Resulting Damage

BOT claims that Benihana's alleged "use" has damaged the value and usefulness to BOT of the BENIHANA Trademark. D.I. 6 ¶ 30. As discussed in the preceding section, Benihana has not made any use of the BENIHANA Trademarks. Such conclusory statements of damage without factual support do not satisfy the fourth element of BOT's breach of contract claim.

### E.      Conclusion

For the reasons discussed herein, this Court should dismiss the First Cause of Action of BOT's Amended Complaint for failure to state a claim.

## III.   Specific Performance

In its second cause of action, BOT alleges that Benihana breached the ARA simply by seeking to register the BENIHANA trademark in the Disputed Countries and that BOT is entitled

to relief in the form of an assignment of the International Registration and a "return of the trademark rights" in the Disputed Countries. D.I. 6 ¶¶ 33-35.

At the outset, specific performance is inappropriate where there has been no breach. Furthermore, the requested relief of an assignment is improper because the International Registration designates the country of Cuba in addition to the Disputed Countries. Since Cuba is within Benihana's Territory by virtue of the 1995 Agreements, Benihana should not be required to assign the International Registration. Finally, Benihana has filed a request for renunciation as to the Disputed Countries. *See* Gamble Decl., Ex. 3. Accordingly, Benihana cannot assign that which it has expressly abandoned.

For the reasons discussed herein and in the preceding sections, this Court should dismiss the Second Cause of Action of BOT's Amended Complaint for failure to state a claim.

## IV.   Conversion

BOT's third cause of action is for conversion. BOT alleges that Benihana "converted," to its ownership, title to the BENIHANA trademark in at least the Disputed Countries and thereby threatened use of the BENIHANA Trademark in their own name. D.I. 6 ¶ 37. BOT seeks relief in the form of an order requiring Benihana to "return these trademark rights" to BOT. *Id.* at ¶ 38.

To state a claim for conversion under New York law, BOT must allege that: (1) Benihana acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to BOT, (3) BOT made a demand for the property, and (4) the demand for the return was refused. *Lefkowitz v. Bank of New York*, 676 F.Supp.2d 229 (S.D.N.Y. 2009).

At the threshold, BOT's conversion claim is fatally flawed because New York does not recognize a cause of action for conversion of intangible property. *Island Rehabilitative Services Corp. v. Maimonides Medical Ctr.*, 859 N.Y.S.2d 903 (N.Y. Sup. 2008) (dismissing claim of conversion of patient lists) citing *Independence Discount Corp. v. Bressner*, 47 A.D.2d 756, 757

10

(1975) ("to state a viable claim for conversion, '[t]angible personal property or specific money must be involved'"); *Frink Am., Inc. v. Champion Road Mach., Ltd.,* 62 F.Supp.2d 679, 683 (N.D.N.Y. 1999) ("an action for conversion will not normally lie when it involves intangible property").

Second, New York law does not recognize a claim for conversion predicated on a duplicative claim for breach of contract. *Ironforge.com v. Paychex, Inc.,* 2010 WL 3911419 (W.D.N.Y. Oct. 5, 2010) (tort of conversion cannot be asserted if there is duplicative claim sounding in contract); *Picture People, Inc. v. Imaging Fin. Servs., Inc.,* 2010 WL 3238977 (S.D.N.Y. Aug. 16, 2010). It must be distinct from any contractual obligations. *Stadt v. Fox News Network, LLC,* 719 F.Supp.2d 312, 318 (S.D.N.Y. 2010) citing *Briarpatch Ltd. v. Geisler Roberdeau, Inc.,* 148 F.Supp.2d 321, 328 (S.D.N.Y. 2001) (for a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some "wrong" that is separately actionable); *W.B. David & Co. v. DWA Commc'ns, Inc.,* 2004 WL 369147, *5-*6 (S.D.N.Y. Feb. 26, 2004) (claim for conversion is deemed redundant where damages are merely being sought for a breach of contract).

As discussed in the preceding section, there is no breach of the ARA and threatened "use" (as opposed to actual use) is not actionable. The 'facts' alleged in support of BOT's breach of contract claim are identical to the facts alleged in support of BOT's conversion claim. BOT's requested relief, i.e. the return of rights, is duplicative of the relief sought through specific performance and is based upon Benihana's alleged breach of the ARA. *See Briarpatch,* 148 F.Supp.2d at 329 *citing In re Chateaugay Corp.,* 10 F.3d 944, 958 (2d Cir. 1993) (where remedy for the proposed claims merely duplicate that already sought, the addition of new claims

11

is not warranted).   Other than the title of the cause of action, the breach of contract and conversion claims are identical in substance and nature.

Assuming *arguendo* that BOT's conversion is viable, as discussed in the preceding sections, the ARA does not grant BOT the specific right of ownership to title of the BENIHANA Trademark in the Disputed Countries, if BOT did not own title as of the Effective Time of the ARA.   Furthermore, BOT has failed to allege any facts in support of the third and fourth elements of its conversion claim.   BOT has not alleged that it made a demand prior to filing suit for the return of its alleged property and therefore, BOT could not allege that Benihana refused its request. *See* D.I. 6, generally.

For the reasons discussed herein, BOT's conversion claim fails and this Court should dismiss the Third Cause of Action of BOT's Amended Complaint for failure to state a claim.

## V.      FALSE DESIGNATION OF ORIGIN

In its fourth cause of action, although not denominated as such, BOT's allegations appear to designate two claims – false designation of origin and false advertising, both purported violations of the Lanham Act.   In either event, for the reasons discussed below, BOT fails to state claims for violations of the Lanham Act.

BOT alleges that Benihana falsely claimed to be acting on behalf of "Benihana of Tokyo, Inc." in submitting its international application to register the BENIHANA trademark in the Disputed Countries. D.I. 6 ¶ 40.   BOT further alleges that BOT is the owner of the corporate and trade name "Benihana of Tokyo, Inc." and that Benihana's alleged use falsely suggests that Benihana is acting with the authorization of BOT, and that the international application was made with BOT's consent or on behalf of BOT. *Id.* ¶¶ 41-42.

BOT further alleges that Benihana advertises "Locations throughout the United States, Latin America and the Caribbean" and that this advertisement is false because it suggests that

Benihana has the right to operate restaurants throughout Latin America when BOT owns the rights in Mexico.  D.I. 6 ¶ 44-46.

### A.      False Designation of Origin

To properly allege a claim for false designation of origin under the Lanham Act, BOT must allege that (i) the "Benihana of Tokyo, Inc." name is entitled to protection under the Lanham Act; and (ii) Benihana's use was likely to cause confusion as to origin or sponsorship of product. *Two Pesos Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992); *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.,* 702 F.Supp.2d 104, 113 (E.D.N.Y. 2010).

There are blatant flaws in BOT's claim.  As a preliminary matter, Defendant Noodle Time, Inc. owns an incontestable United States Trademark Registration for the mark BENIHANA OF TOKYO, Registration No. 0940142, for "restaurant services."  *See* Gamble Decl., Ex. 1, 2, and 4.  Therefore, Benihana has the exclusive right to use the BENIHANA OF TOKYO mark throughout the entire United States.  *See, e.g., Brass Constr. v. Muller,* 2001 WL 1131986, *3 (S.D.N.Y. Sep. 25, 2001) (stating, "If, as the defendants contend, the Name Agreement [*i.e.,* an agreement stating that defendant Muller owned the name "Brass Construction"] is enforceable, then the plaintiffs' claims are doomed.); *Rare Earth, Inc. v. Hoorelbeke,* 401 F. Supp. 26, 29 (S.D.N.Y. 1975) ("By stipulation it was agreed that all of the rights in the trademark 'Rare Earth' are owned by plaintiff corporation Rare Earth, Inc. . . . Therefore, the only issue for this Court is who owns the stock in the plaintiff corporation." (ellipses in original)); *cf. E.F. Prichard Co. v. Consumers Brewing Co.,* 136 F.2d 512, 522 (6th Cir. 1943) (in manufacturer-distributor dispute, stating, "In such a case, the party who has agreed that the other shall be the owner of the trade-mark, is estopped from raising questions with regard to adoption and use; and the inquiry is limited to determining whether the terms of the contract have been violated.").

13

As a result of the 1995 Agreements, BOT acknowledges Benihana's exclusive ownership of the mark and name, BENIHANA OF TOKYO. BOT has assigned all of its right, title and interest in the mark and name and cannot own protectable Lanham Act rights in "Benihana of Tokyo." BOT's use must be limited to non-trademark use. Otherwise, BOT is in breach of the 1995 Agreements. Thus, BOT cannot meet either element of its false designation of origin claim because it cannot establish exclusive ownership of the mark and name BENIHANA OF TOKYO.

Benihana has not falsely claimed to be acting on behalf of "Benihana of Tokyo, Inc." The fact that "Benihana of Tokyo" appears on Benihana's International Registration (*see* Gamble Decl., Ex. 5) is the result of a scrivener's error by the United States Patent and Trademark Office ("USPTO"). International Registration 1048205 is based upon Benihana's U.S. Registration No. 1230609 for the BENIHANA mark. This mark was one of many assigned from BOT to BNC (*see* Gamble Decl., Ex. 1, 2, and 6), and subsequently from BNC to Defendant Noodle Time, Inc.

While the assignment documents correctly identify the assignee as "Noodle Time, Inc.," the USPTO appears to have incorrectly input the assignee and current owner of U.S. Registration No. 1230609 as "Noodle Time, Inc. (Benihana of Tokyo, Inc.)." This is the only registration in the list of assigned registrations that incorrectly identifies the assignee. Since the international application was based upon U.S. Registration No. 1230609, this inaccurate owner information was automatically transferred to the International Registration. As of the filing of this Motion, Noodle Time has filed a notice of a corrective assignment with the USPTO (*see* Gamble Decl., Ex. 7).

For the reasons discussed herein, BOT fails to allege a claim for false designation of origin.

RLF1 3797990v. 1

### B.    False Advertising

In order to state a claim for false advertising, BOT must allege: (i) that the challenged advertisement is literally false; or (ii) that the statement while not literally false is likely to mislead or confuse customers. *Tiffany (NJ), Inc. v. eBay, Inc.,* 600 F.3d 93, 112 (2d Cir. 2010). In addition, BOT must allege that the false or misleading representation involved an inherent or material quality of the product. *Id.*; 15 U.S.C. § 1125(a)(1). BOT fails to allege that this statement related to an inherent or material quality of Benihana's services. For this reason alone, BOT's purported claim for false advertising fails.

The only allegation in support of this false advertising claim is that Benihana advertises its "Locations Throughout the United States, Latin America and the Caribbean" and that such statement is false because BOT owns a registration and does business in Mexico, part of Latin America.   D.I. 6 ¶¶ 44-47.   BOT cannot allege that the statement is literally false since, indisputably, Benihana operates in multiple states and countries in the United States, Latin America and the islands of the Caribbean.

Since the statement at issue is not literally false, BOT must also allege that the challenged advertisements tend to mislead or confuse customers and must allege that a statistically significant part of the customer audience holds the false belief allegedly communicated by the challenged statement. *Tiffany (NJ), Inc.,* 600 F.3d at 112-113.   Aside from BOT's failure to allege that this statement is material to consumer purchasing decisions, BOT does not, and could not make allegations that the deceitful statement mislead a substantial number of customers.

For the reasons discussed herein, BOT fails to allege a claim for false designation of origin claim.

### C.     Conclusion

BOT's false designation of origin claim fails and this Court should dismiss the Fourth Cause of Action of BOT's Amended Complaint.

## VI.     Infringement in Singapore and Vietnam

BOT alleges that BOT owns registrations in Singapore and in Vietnam and that by virtue of Benihana's International Registration in the Disputed Countries, including Singapore and Vietnam, Benihana has threatened BOT's use which constitutes infringement under the national laws of Singapore and Vietnam.  D.I. 6 ¶¶ 53-56.  At the outset, BOT has not attached copies of its registrations in the countries of Singapore and Vietnam.  Furthermore, as discussed herein, "threatened use" is not a violation of trademark law in Singapore or Vietnam.  Thus, to constitute infringement, BOT must allege Benihana's commercial use of the BENIHANA trademark within those countries, which it fails to do.  This failure is fatal to BOT's claim for infringement in Singapore and Vietnam.

In Singapore, a registered trademark is infringed when a person *uses* a mark identical to it or so nearly resembling it as to be likely to deceive or cause confusion, *in the course of trade* in relation to any goods in respect of which it is registered and in such a manner as to render the use of the mark likely to be taken either: (a) as being use as a trademark; or (b) in a case in which the use is use upon the goods in physical relation thereto, or in an advertising circular or other advertisement issued to the public, as importing a reference to some person having the right either as proprietor or as registered user to use the trademark or to goods with which such a person as aforesaid is connected in the course of trade.  *Edward J. Fennessy, Trademarks Throughout the World,* § 144:21 (2010).

In Vietnam, registration grants the proprietor the exclusive right to use the mark during the registration term on goods for which the mark is registered in manufacturing, commerce, or services. *Trademarks Throughout the World,* 175:19.

BOT fails to allege that Benihana has made any use of the BENIHANA mark in commerce or trade in Singapore and Vietnam and bases its entire claim on Benihana's attempt to register the BENIHANA mark. BOT's infringement claims fail. Even if the international registration alone was enough to constitute actionable use, and it is not, the issue of infringement is mooted by virtue of Benihana's request for renunciation removing the Disputed Countries, including Singapore and Vietnam, from the International Registration. *See* Gamble Decl., Ex. 3 and 5.

For the reasons discussed herein, this Court should dismiss the Fifth Cause of Action in BOT's Amended Complaint.

## VII.   Declaratory Judgment

The sixth cause of action in the Complaint is for a declaratory judgment. A declaratory judgment seeks relief from the court in the form of the court's declaration of the rights, duties, or obligations of two parties to a dispute. BOT seeks the court's clarification of the word "Assets" as set forth in the ARA. D.I. 6 ¶¶ 61-62. BOT alleges that it has a certain belief regarding the definition of the term but fails to allege that Benihana's interpretation of the term is any different. *Id.* Accordingly, BOT's allegations, on their face, fail to allege a dispute between the parties and state a claim for a declaratory judgment.

The Declaratory Judgment Act (the "DJA") provides that "[i]n a case of actual controversy within its jurisdiction...any court of the United States...may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The case or controversy "must have taken on fixed

17

and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Jenkins v. U.S.,* 386 F.3d 415, 417-418 (2d Cir. 2004).[8]

There is no dispute regarding what BENIHANA Trademarks were included in the term "Assets" and assigned by BOT to Benihana as part of the 1995 Agreements. There is no dispute regarding the definition of the term "Assets." The allegations of the Complaint are very clear. This entire lawsuit is centered on Section 7.10 of the ARA and BOT's unsuccessful attempt to assert a claim against Benihana for breach of that provision.

This Court cannot indulge BOT's claim where it has failed to allege any facts to show that Benihana acted in a manner exhibiting a "definite intent and apparent ability to commence use" of the BENIHANA mark in commerce in the Disputed Countries. *See Starter Corp. v. Converse, Inc.,* 84 F.3d 592, 595 (2d Cir. 1996); *Golden Gulf Corp. v. Jordache Enters., Inc.,* 896 F.Supp. 337, 340 (S.D.N.Y. 1995). As a whole, BOT's allegations demonstrate, at most, a "vague and unspecific desire to use a mark" which is too contingent to give rise to an actual controversy. *Golden Gulf Corp.,* 896 F.Supp. at 340. Therefore, BOT's claim is not ripe and must be rejected.

This Court lacks jurisdiction to issue a declaratory judgment regarding the word "Assets" because there is no allegation of a dispute or controversy between the parties. For the reasons discussed herein, this Court should dismiss the Sixth Cause of Action in BOT's Amended Complaint.

---

[8] Even if BOT met the case and controversy requirement, which it has not, a court has discretion to determine whether to actually exercise its declaratory judgment authority "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Cont'l Cas. Co, v. Coastal Sav. Bank,* 977 F.2d 734, 737 (2d. Cir. 1992).

## CONCLUSION

For the foregoing reasons, Defendants Benihana, Inc. and Noodle Time, Inc. respectfully

request that the Court grant this motion and dismiss the Amended Complaint.

Robert W. Whetzel (#2288)

Of Counsel:                                         Whetzel@rlf.com
Janet Moreira Gamble (#0597090)                     RICHARDS, LAYTON & FINGER, P.A.
Alan H. Fein (#288349)                              One Rodney Square
STEARNS   WEAVER   MILLER   WEISLER                 P.O. Box 551
ALHADEFF & SITTERSON, P.A.                          Wilmington, Delaware 19899
Suite 2200, Museum Tower                            (302) 651-7700
150 West Flagler Street                             *Attorney for Defendants*
Miami, Florida  33130
(305) 789-3200


February 4, 2011

19

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2011, I hand delivered the foregoing document to the following persons and electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

David M. Powlen
Barnes & Thornburg LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801


Robert W. Whetzel (#2288)
whetzel@rlf.com