# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| BENIHANA OF TOKYO, INC. )<br>)<br>  Plaintiff, )<br>)<br>  vs. )<br>)<br>BENIHANA INC., )<br>)<br>  and )<br>)<br>NOODLE TIME, INC., )<br>)<br>  Defendants. ) | CIVIL ACTION NO: 1:10-cv-01051-SLR |

## REPLY BRIEF IN SUPPORT OF
## PLAINTIFF BENIHANA OF TOKYO, INC.'S MOTION TO EXCLUDE AND/OR
## STRIKE AND FOR EXTENSION OF TIME

David M. Powlen (DE No. 4978)
BARNES & THORNBURG LLP
1000 North West Street, Suite 1200
Wilmington, Delaware 19801
Telephone (302) 888-4536
Electronic Mail: david.powlen@btlaw.com

Mark R. Owens (DE No. 4364)
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
Telephone (317) 236-1313
Facsimile (317) 231-7433

1000 North West Street, Suite 1200
Wilmington, Delaware 19801
Telephone (302) 888-4536
Electronic Mail: mark.owens@btlaw.com

James R. Burdett, Esq.
Joseph D. Lewis, Esq.
BARNES & THORNBURG, LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone (202) 289-1313
Facsimile   (202) 289-1330
Electronic Mail: jim.burdett@btlaw.com

*Attorneys for Benihana of Tokyo, Inc.*

# **TABLE OF CONTENTS**

**Page**

A.  The Exhibits Proffered by Defendants Should not be Considered and do not Support Summary Dismissal. ................................................................................................... 1

B.  Exhibits 2, 3, 4, 6, and 7 Should Be Excluded Because They do not Satisfy the Exceptions Relied on by Defendants. ................................................................................. 2

    1.  Defendants' attempted use of Exhibits 4, 6, and 7 does not fit within the "public records" exception. ...................................................................................... 3

    2.  Exhibit 3 is not a public document, did not exist at the time of the Complaint, and is not integral to the Complaint. ..................................................... 8

    3.  Defendants tacitly admit that Exhibit 2 should be excluded. .................................. 9

C.  The Court Should Strike Defendants' Statement of Facts Because it Relies on Defendants' "Summary" of Unknown Documents. ............................................................. 9

# **TABLE OF AUTHORITIES**

**Page(s)**

## **FEDERAL CASES**

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ..........................9

*Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144, 152 (S.D.N.Y. 2007) .......................2

*Gap v. Stone Int'l Trading, Inc.*, 169 F.R.D. 584 (S.D.N.Y. 1997), *aff'd*, 125 F.3d 845 (2d Cir. 1997) ...........................................................................................................6

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ....................................................3, 4, 5, 7

*Maniolos v. U.S.*, __ F. Supp. 2d __, 2010 WL 3853383 (S.D.N.Y. 2010) .........................2

*Mervyn's Holdings, LLC, v. Lubert-Adler Group IV, LLC*, 426 B.R. 488 (Bankr. D. Del. 2010)..............................................................................................3, 4, 5, 7

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) ................................................................................................................................8

*Psenicska v. Twentieth Century Fox Film Corp.*, 07 Civ. 10972, 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008) ................................................................................2

*Ratzlaff v. Horace Mann Ins.*, __ F. Supp. 2d __, 2010 WL 3700200 (D. Del. 2010) ............................................................................................................................10

*Steele v. Bulova Watch Co.*, 344 U.S. 280, 281, 286 (1952) .............................................6

*Total Petroleum Puerto Rico Corp. v. Torres-Caraballa*, 672 F. Supp. 2d 252 (D.P.R. 2009) ................................................................................................................10

### A. The Exhibits Proffered by Defendants Should not be Considered and do not Support Summary Dismissal.

Defendants have clarified that, despite the presentation of seven exhibits, most of which relate to activity that took place after the Amended Complaint was filed, they are not requesting that the Court convert their Motion to Dismiss into one for Summary Judgment. (Response, D.I. 19 at 7.) Thus, the remaining issue is whether five[1] of these documents can be considered by the Court in the context of a Motion to Dismiss.

Defendants acknowledge that the purpose of their Motion to Dismiss is "to test the sufficiency of the Amended Complaint, not to resolve disputed facts or decide the merits of the case." (*Id.* at 7.) Yet, in the very next paragraph, Defendants complain that "BOT does not dispute [Defendants'] purported 'interpretation' [of the word 'use']." Defendants argue that the lack of disagreement establishes that there is no ambiguity, which renders this case suitable for dismissal on a motion to dismiss. (*Id.* at 7-8.) This argument is flawed, both as a matter of procedure as well as of fact.

As a matter of procedure, BOT has not yet responded to the Motion to Dismiss. Rather, BOT has requested an extension of time in which to do so. (D.I. 16.) It is for this reason that BOT has not yet offered its interpretation of the word "use."[2] In view of Defendants' substantive arguments, BOT will briefly respond to them in this Reply Memorandum.

As a matter of fact, the record before the Court already establishes an ambiguity with regard to the meaning of the word "use" as it appears in the ARA. Indeed, Defendants themselves have presented contradictory arguments. In their Brief in Support of their Motion to Dismiss, Defendants contend that the ARA's reference to the word "use" was intended as "a

---

[1] BOT did not object to the consideration of two exhibits that were referred to in the Amended Complaint (Exhibits 1 and 5).

[2] When BOT responds to the pending Motion to Dismiss, the substantive arguments about any documents which are not excluded by the Court will be presented in full, along with BOT's response to the arguments that do not involve the documents at issue here.

1

term of art and an abbreviation of the phrase 'use in commerce,' defined in the Lanham Act[.]" (D.I. 12 at 8.) Now, in the instant briefing, the Defendants contend that the word "use" was intended by the parties to the ARA to carry "the ordinary and common meaning." (D.I. 19 at 8.) Irrespective of Defendants' interpretation, the discrepancy presented by their own arguments creates an ambiguity as to the interpretation of the term and necessitates a factual inquiry because "when the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal on a Rule 12(b)(6) motion." *Maniolos v. U.S.*, __ F. Supp. 2d __, 2010 WL 3853383, *9 (S.D.N.Y. 2010) (internal quotations omitted) (citing *Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144, 152 (S.D.N.Y. 2007); *Psenicska v. Twentieth Century Fox Film Corp.*, 07 Civ. 10972, 2008 WL 4185752 at *4 (S.D.N.Y. Sept. 3, 2008) (interpretation of contract term not suitable for disposition on motion to dismiss).

Thus, the contract claim in this case is not suitable for dismissal on the pleadings, and the Defendants cannot resolve this case by eliminating the fact finding process.

**B.    Exhibits 2, 3, 4, 6, and 7 Should Be Excluded Because They do not Satisfy the Exceptions Relied on by Defendants.**

In their Brief in support of their Motion to Dismiss (D.I. 12), Defendants properly state that in applying Rule 12(b)(6), the Court may consider certain documents not included with the Complaint: (1) Materials incorporated by reference, and (2) documents that are otherwise "integral" to the complaint. (D.I. 12 at 5.) Accordingly, BOT responded with the instant motion, demonstrating that Exhibits 2, 3, 4, 6, and 7 did not meet the two exceptions that would allow these documents to be considered in deciding a motion to test the sufficiency of the complaint.

Defendants now raise a new argument as to Exhibits 4, 6, 7 and its Statement of Facts, and urge this Court to consider them by taking "judicial notice" of "public records." (D.I. 19 at 10.) In some instances the documents are not even identified. For example, Defendants seek to support their Statement of Facts by characterizing it as "summarized from publicly available and

2

accessible articles, press releases, and corporate documents," and without any further details. (D.I. 19 at 14.)

As to the documents Defendants did identify and submit with their Motion to Dismiss, they offer no explanation as to how documents created *after* and *in response to* the Complaint (such as Exhibit 3) can possibly be "integral" to the allegations contained in the Complaint, which by its very nature is based on the Defendants' conduct prior to filing.

As to Exhibit 2, Defendants effectively concede that the document submitted with their Motion to Dismiss should not be considered, and have filed a belated Motion to Substitute a different document.[3]  (D.I. 18.)  Each argument is discussed in turn below.

> 1. <u>Defendants' attempted use of Exhibits 4, 6, and 7 does not fit within the "public records" exception.</u>

Apparently conceding that the documents are not referenced in or integral to the Complaint, Defendants, for the first time, identify a very limited public record exception in support of a motion to dismiss.  Defendants rely on one case within this circuit in support of their claim that Exhibits 4, 6, and 7 can be considered as public records: *Mervyn's Holdings, LLC, v. Lubert-Adler Group IV, LLC*, 426 B.R. 488, 496 (Bankr. D. Del. 2010).  (D.I. 19 at 10.)[4]  The *Mervyn's Holdings* decision is instructive as to the limited nature of the public records exception:

> In the Third Circuit, courts may take judicial notice of public records to acknowledge that the facts contained in the records existed in the public realm **at that time**.

*Id.* at 496 (citations omitted) (emphasis added).  The court further explained the limitation of the "public record" exception: "The court may not, however, consider the **truth of the information**

---

[3] BOT will respond to the separate Motion to Substitute in due course.

[4] The only other case relied on by Defendants that examines the public records exception in the context of a motion to dismiss is *Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004), which is discussed further below. (D.I. 19 at 10.)  The remaining cases cited by Defendants do not apply the public records exception in the context of a motion to dismiss, but rather are in the context of summary judgments, injunction requests involving evidentiary hearings, or involve requests by a *plaintiff* to take judicial notice of public records. *Id*.

3

in the records." *Id*. (citations omitted) (emphasis added). The documents proffered by Defendants should not be considered because they pertain to the time period after the filing of the Amended Complaint, and because the mere fact that these documents exist is not pertinent to the allegations in that complaint.

In *Mervyn's Holdings*, the court took judicial notice of press releases because they were public documents. But, the "judicial notice" was merely perfunctory in nature. The court denied the motion without even discussing the contents of the press releases. The court simply mentioned that it could take judicial notice of the records, but that it could not consider them for their truth or veracity.

Here, Defendants seek to go well beyond the bounds of permissible use of public records by arguing for dismissal based on the purported *veracity* of the information contained in Exhibits 4, 6, and 7. In several instances, Defendants rely on "facts" created *after* the Complaint was filed to argue that the documents somehow make the Complaint retroactively deficient. Defendants' gross misapplication of the public records exception is apparent, and these exhibits should be excluded from consideration with the pending Motion to Dismiss. Although Defendants are free to introduce these documents into evidence to support their defenses, or to show that they have attempted to mitigate damages, the documents have no bearing on the sufficiency of the Complaint.

**Exhibit 4** consists of printouts of a service mark registration and ministerial recorded documents from the U.S. Patent and Trademark Office ("USPTO"). Defendants argue that these documents demonstrate that Defendants owned incontestable trademark rights, the validity and ownership of the registered mark, and registrant's exclusive right to use the mark in commerce. (D.I. 19 at 11-12.) Thus, Defendants seek to use the document in *defense* of the pleaded allegations, and not to show that the allegations were insufficient.

4

The public records exception does not aid Defendants because Exhibit 4 cannot by relied upon for its veracity to create an inference that Defendants did not impinge on BOT's rights. *E.g.*, *Mervyn's Holdings*, 426 B.R. at 496. In *Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004), relied on by Defendants (D.I. 19, at 10), the complaint[5] was premised on statements referring to a document filed for recordation with the USPTO as an "assignment." Even though the document was referred to in the complaint, the court held that it could not consider its effect because the USPTO's "recordation is a ministerial act and reflects no determination as to the legal validity of the document filed or its effect, if any, on title to the patent or patent application." *Id*. at 965. Likewise, the Defendants here cannot rely on judicial notice of the mere existence of printouts of a trademark registration and a notice of recorded documents to support conclusions that are based upon the veracity and legal effect of the documents. This is an impermissible use of judicially noticed "public records," and Exhibit 4 should be excluded.

Defendants further assert that Exhibit 4 is integral to BOT's claim. (D.I. 19 at 12.) They argue that, as a matter of law, Exhibit 4 demonstrates that Defendants did not falsely use the trade name "Benihana of Tokyo, Inc." in the trademark applications they filed in that name. While fully addressing the merits at this stage is premature, even if Exhibit 4 were to be considered on the merits, and for the truth of the statements therein, the documents would not support the Defendants' argument. Exhibit 4 purports to show that the *service mark* BENIHANA OF TOKYO was renewed in 1992 for a ten-year term. Thus, on its face, Exhibit 4 shows that the registration would have expired in 2002 and be of no legal effect. Nor do Defendants explain how Exhibit 4 shows that the registration is owned by either of them.

Further, Defendants' ownership of a U.S. *service mark* registration for BENIHANA OF TOKYO for restaurant services would not be relevant to the allegations in the Complaint, which

---

[5] Unlike the situation in *Kaempe v. Myers,* the Amended Complaint makes no reference whatsoever to Exhibit 4. It is only the Defendants that seek to interject these documents.

are in no way based upon any U.S. service mark. BOT's allegations refer to false use of the *corporate and trade name* (not service mark), "Benihana of Tokyo, Inc." (D.I.6 at ¶42.) Moreover, the Complaint relates to the assertion of rights by Defendants *outside of the United States*, where Exhibit 4 has no effect and can provide no defense. BOT's claim does not hinge on whether or not Defendants have a valid service mark registration in the U.S. Thus, Exhibit 4 – a U.S. service mark registration – is irrelevant.

Defendants complain that BOT's claim under the Lanham Act is "wholly inappropriate" because it refers to the filing of trademark applications outside of the U.S. in what they call the "Disputed Countries." (D.I. 19 at 11, n.20.) Defendants argue that the Lanham Act does not reach conduct outside of the U.S. This is not an accurate statement of the law. The Lanham Act provides an extremely broad jurisdictional grant and has often been invoked to enjoin acts of infringement committed abroad. *See, e.g.*, *Gap v. Stone Int'l Trading, Inc.*, 169 F.R.D. 584, 591-92 (S.D.N.Y. 1997), *aff'd*, 125 F.3d 845 (2d Cir. 1997) (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280, 281, 286 (1952)). The Court in *Bulova* held that "a United States District Court has jurisdiction to award relief to an American corporation against acts of infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States." 344 U.S. at 281. Because both defendants are U.S. corporations and they are managed from within the United States, the Lanham Act gives this court jurisdiction over the alleged charges of unfair competition, even though they relate to the use of "BENIHANA" trademark and "Benihana of Tokyo, Inc." trade name in other countries.

**Exhibit 6.** Defendants state that they introduce "Exhibit 6 for the purposes of establishing the existence of Assignment No. 2 and Assignment No. 4[6]. . . ." (D.I. 19 at 12.) In *Kaempe*, however, the court held that the USPTO's "recordation is a ministerial act and reflects

---

[6]Although they purport to rely on Assignment No. 2 and Assignment No. 4, Defendants do not supply copies of the actual recorded documents. Thus, nothing meaningful can be gleaned from Exhibit 6.

no determination as to the legal validity of the document filed or its effect, if any, on title to the patent or patent application." 367 F.3d at 965. The holding in *Kaempe* specifically rejects Defendants' attempted use of the public records exception. Thus, the Court should not take judicial notice of Exhibit 6 for the purpose of establishing the effect of the purported assignments urged by Defendants, and the exhibit should be excluded.

**Exhibit 7** is purportedly a corrective assignment filed by Defendants with the USPTO on January 28, 2011 that the Defendants concede did not exist at the time the Complaint was filed. Nevertheless, the Defendants attempt to rebut the Complaint's allegation that BI sought to register the BENIHANA Trademark in various countries and falsely claimed to be acting on behalf of Benihana of Tokyo, Inc. by citing to after-the-fact, remedial action taken by Defendants. BOT is aware of no authority, and Defendants provide none, for the proposition that a complaint can be dismissed for failure to state a claim based on a document created by the Defendants' themselves *after* a suit is filed. To the contrary, *Mervyn's Holdings* limits use of public records to "acknowledge that the facts contained in the records existed in the public realm at that time." 426 B.R. at 496. The fact that a document existed as of January 28, 2011, cannot bespeak of the sufficiency of the Amended Complaint that was filed on December 7, 2010.

Moreover, Defendants' reliance on Exhibit 7, exceeds the bounds of the public records exception because Defendants rely on the legal effect of the document and offer their own interpretation of it in arguing dismissal. They claim that the document shows that the "USPTO appears to have incorrectly input the assignee and current owner of U.S. Registration No. 1230609 as 'Noodle Time, Inc. (Benihana of Tokyo, Inc.).'" (D.I. 12 at 14.) However, nowhere in the document does it reference, let alone establish that the USPTO made any such "scrivener's error." In any event, Defendants cannot rely on the veracity or legal effect of such a ministerial recordation at the USPTO. *See Mervyn's Holdings* and *Kaempe*, *supra*.

7

Defendants' reliance on public records to establish facts places the veracity of these documents at the front and center of their Motion to Dismiss. They offer their own characterizations of the operative legal effects of the documents, and urge that the Court take judicial notice of facts that occurred after the filing of the Complaint. Thus, the Court should exclude Exhibits 4, 6, and 7 in considering Defendants' Motion to Dismiss.

2. <u>Exhibit 3 is not a public document, did not exist at the time of the Complaint, and is not integral to the Complaint.</u>

Exhibit 3 is a purported copy of a document titled Request for the Recording of a Renunciation, which Defendants *sent to* the World Intellectual Property Organization in Switzerland, and a purported receipt dated February 4, 2011. Defendants provide no explanation of what makes this document a public document subject to judicial notice. The mere sending of a document to a government agency does not make it a public document. *See, e.g.*, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (noting that all prior applications of this exception involved documents to which the public had "unqualified access" and holding that "a document is not a public record for purposes of a motion to dismiss solely because it might be subject to disclosure under FOIA"). BOT knows of no way for it or this Court to obtain this document from Switzerland.

Defendants argue that Exhibit 3 is integral to the Complaint because "it demonstrates that BOT is unable to prove any set of circumstances that would support its claims or entitle it to any relief." (D.I. 19 at 9.) This tautology in no way responds to BOT's contention that Exhibit 3 cannot be integral to the Compliant because it, along with the underlying facts presented in the document, did not even exist at the time the Complaint was filed. This document is in existence *only* because BOT filed this lawsuit in which it alleged damages from Defendants' International Registration of the BENIHANA trademark. This allegation references acts and resulting damages that transpired *before* the Complaint was filed. Defendants cite to no authority for the

8

proposition that a document created *in response* to (and thus *after)* the Complaint can somehow be "integral" to the Complaint.

As the Third Circuit stated in *Burlington Coat*, the rationale underlying the "integral to the Complaint" exception "is that the primary problem raised by looking to documents outside the complaint - lack of notice to the plaintiff - is dissipated . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Here, there was no notice to BOT of Exhibit 3 because Defendants did not create the exhibit until after they had been sued. Defendants hope that the Court will ignore their wrongful conduct that happened *before* the Complaint was filed by pointing to potentially remedial efforts they undertook *after* they were sued. Their subsequent acts might at best relate to the amount of damages, but they do not exonerate Defendants for the complained of activities occurring before the Complaint.

3. <u>Defendants tacitly admit that Exhibit 2 should be excluded.</u>

Defendants do not argue that the Exhibit 2 they submitted in support of their Motion to Dismiss should be considered. Instead, Defendants respond by filing a Motion to Substitute a new exhibit. (D.I. 17). Thus, they tacitly admit that Exhibit 2 attached to their Motion to Dismiss is not germane to the Complaint, and there is no dispute that Exhibit 2 should be stricken. BOT will separately address the merits of Defendants' belated Motion to Substitute (D.I. 17), which is due on or before March 24, 2011.

**C.**   **<u>The Court Should Strike Defendants' Statement of Facts Because it Relies on Defendants' "Summary" of Unknown Documents.</u>**

Defendants admit that aside from the references to Exhibits 1 and 5 (which BOT does not seek to exclude), their Statement of Facts (appearing at D.I. 12 at 2) is comprised of a recitation of factual matters *outside* of the Complaint. (D.I. 19 at 14.) In fact, Defendants describe their statement as "summarized from publicly available and accessible articles, press releases, and corporate documents." *Id.* Defendants rely on the "public records" exception to argue that the

9

Court may consider their purported "summary" of documents to circumvent the principle that courts are limited to the factual pleadings in the Complaint in deciding a motion to dismiss. *E.g.*, *Ratzlaff v. Horace Mann Ins.*, __ F. Supp 2d __, 2010 WL 3700200, *1 (D. Del. 2010).

Defendants cite to no authority permitting the Court to take judicial notice of their purported "summary" of unidentified accessible articles, press releases, and corporate documents, which may or may not be public, much less "public records." Here, Defendants provide neither the documents nor the tools for the Court to identify the documents for itself. The Court should not take judicial notice of a summary of facts, especially where Defendants fail to support those facts with citations to identified records. *E.g.*, *Total Petroleum Puerto Rico Corp. v. Torres-Caraballa*, 672 F. Supp. 2d 252, 257 (D.P.R. 2009) (refusing to take judicial notice of records not identified to the court).

Defendants have again distorted the procedural context of the instant Motion when they argue that BOT does not dispute the purported "facts" themselves. BOT requested an extension of time to respond to the Motion to Dismiss and, therefore, has not yet responded on the merits.

Defendants claim that their motion should remain one for dismissal under Rule 12(b)(6), but now wish for the Court to make factual findings based on an undocumented "summary" of an alleged factual record which is entirely outside of the Complaint. Defendants' Statement of Facts should be stricken.

Dated: March 17, 2011                    Respectfully submitted,

<div style="margin-left: 3em;">

<u>/s/ David M. Powlen</u>
David M. Powlen (DE No. 4978)
BARNES & THORNBURG LLP
1000 North West Street, Suite 1200
Wilmington, Delaware 19801
Telephone (302) 888-4536
Electronic Mail: david.powlen@btlaw.com

*Attorneys for Benihana of Tokyo, Inc.*

</div>

10