IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BENIHANA OF TOKOYO, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 10-1051-SLR |
| | ) | |
| BENIHANA, INC., and | ) | |
| NOODLE TIME, INC., | ) | |
| | ) | |
| Defendants. | ) | |

David M. Powlen, Esquire of Barnes & Thornburg LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: James R. Burdett, Esquire, Joseph D. Lewis, Esquire and Mark R. Owens, Esquire of Barnes & Thornburg LLP.

Robert W. Whetzel, Esquire of Richards, Layton & Finger, PA, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Janet Moreira Gamble, Esquire and Alan H. Fein, Esquire of Stearns Weaver Miller Weisler Alhadeff & Sitterson, P.A.

**MEMORANDUM OPINION**

Dated: December 13, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On December 3, 2010, Benihana of Tokyo, Inc. ("plaintiff" or "BOT") filed this complaint comprising six causes of action ("claims"): (1) breach of contract; (2) specific performance; (3) conversion; (4) false designation of origin; (5) trademark infringement; and (6) declaratory judgment. (D.I. 1 at 6-12) Plaintiff amended its complaint on December 7, 2010 ("amended complaint"). (D.I. 6) On February 4, 2011, defendants Benihana, Inc. ("BI") and Noodle Time, Inc. ("Noodle Time," collectively "defendants") filed a motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.I. 11) In lieu of a responsive brief, plaintiff filed a motion to strike/exclude (D.I. 15), which the court granted-in-part and denied-in-part. (D.I. 25) Presently before the court is defendants' renewed motion to dismiss (D.I. 11) pursuant to Rule 12(b)(6). This court has jurisdiction under 28 U.S.C. § 1331, 1332 and 1338.

## II. BACKGROUND

Plaintiff is a New York corporation with a principal place of business in New York, New York. (D.I. 6 at ¶ 1) Defendant BI is a Delaware corporation and defendant Noodle Time is a Florida corporation. (Id. at ¶¶ 2, 3) Both defendants have a principal place of business at the same address in Miami, Florida. (Id.) Noodle Time is a subsidiary of BI. (Id.)

BOT was founded by Rocky Aoki ("Aoki") in 1963 and opened its first Japanese teppanyaki steakhouse called "Benihana" in New York. (D.I. 6 at 2 ¶ 6; D.I. 12 at 2). The concept proved popular; by 1972 BOT owned, operated or licensed approximately

18 restaurants grossing $12 million. (D.I. 12 at 2) Several years later, Aoki formed Benihana National Corporation ("BNC"), taking the company public to raise capital. (*Id.*) Aoki served as chairman of both BNC and privately-held BOT, retaining 51% of BNC's common stock and keeping about 30 restaurants in BOT. (*Id.*) Later, BNC announced that it would acquire BOT's operations in the United States and rights to BOT's trademarks. (*Id.*) Defendant BI was formed, then acquired BNC in a 1995 merger transaction ("1995 transaction"). (*Id.*) Aoki continued to serve as chairman of BI. (*Id.*) The 1995 transaction was governed by the "Amended and Restated Agreement and Plan of Reorganization" ("ARA"). (D.I. 6 at ¶ 8; D.I. 12 at 2; D.I. 13, ex. 1)

The ARA provided for the sale, transfer and assignment of certain restaurants listed on Schedule A of the ARA, and all related assets, from BOT to BI (or to a wholly-owned subsidiary of BI). (D.I. 13, ex. 1 § 1.01) This included the trademarks and servicemarks listed on Schedule 1.01(d) ("Trademarks") "to the extent applicable to the United States (including its territories and possessions), Central America, South America and the islands of the Caribbean sea" ("Territory"). (*Id.*) Among the Trademarks listed on schedule 1.01(d) were the text "BENIHANA" ("the BENIHANA trademark") and a "flower design."[1] (D.I. 13, ex. 1, Schedule 1.01(d)) Section 7.10 of the ARA further provided that

> [BI] will own the Trademarks in the Territory and BOT will continue to own the Trademarks outside of the Territory. Accordingly, each of BOT and Benihana agree that, without the prior written consent of the other, neither will make any use of the Trademarks which could reasonably be expected to reduce the value or usefulness of the Trademarks to the other party. In addition, each of BOT and [BI] shall be responsible for the proper

---

[1]"The word 'Benihana' is translated as 'red flower.'" (D.I. 13, ex. 6)

2

registration and maintenance of the Trademarks and the prosecution of infringements or potential infringements of the Trademarks in the territories where such party has an interest in the Trademarks. . . . The obligations of this Section shall survive the Closing for an indefinite period.

(D.I. 13, ex. 1 at § 7.10)

On or about April 23, 2010, defendants initiated an application for international registration ("registration") of the BENIHANA trademark with the World Intellectual Property Organization ("WIPO").[2] (D.I. 6 at ¶ 15; D.I. 27, ex. 7) This application was assigned Registration No. 1048205 and sought protection in the countries of Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam and Zambia ("disputed countries") as well as Cuba. (*Id.* at ¶¶ 15, 18)

In response, plaintiff filed this suit, in December 2010, alleging that defendants' application for trademark protection in the disputed countries was a breach of the ARA. (D.I. 1) In February 2011, defendant Noodle Time filed a "Request for the Recording of a Renunciation" ("renunciation") with WIPO, renouncing registration of the BENIHANA trademark in the disputed countries, but not in Cuba. (D.I. 13, ex. 3)

## III. STANDARD OF REVIEW

In reviewing a motion filed under Rule 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, exhibits

---

[2]Plaintiff also alleges, in its answering brief, that: (1) on July 5, 2010, defendant Noodle Time initiated another WIPO application for registration, in certain disputed countries, of a mark comprising a flower design ("second registration"); (2) the second registration was unknown to plaintiff until September 2011; and (3) the second registration was renounced on January 28, 2011. (D.I. 26 at 8) (*citing* D.I. 27, ex. 9)

3

attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[when there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

Plaintiff's six claims are related to three alleged specific acts of defendants, to wit: (1) seeking registration of the BENIHANA trademark in the disputed countries, particularly with respect to Singapore and Vietnam where plaintiff had obtained prior registration; (2) purporting to be plaintiff or to be authorized by plaintiff in seeking said

4

registration; and (3) falsely advertising that defendants have "[l]ocations throughout the United States, Latin America and the Caribbean."

Plaintiff's breach of contract, specific performance, and conversion claims are based on defendants seeking registration in the disputed countries, allegedly in violation of the ARA. These claims, therefore, are dependent on interpretation of the contract language, as is plaintiff's declaratory judgment claim. Plaintiff's false designation of origin claim is actually two claims: a claim of false designation of origin ("false designation claim") and, separately, a claim of false advertising ("false advertising claim"). The false designation claim is based on defendants' purported use of the "Benihana of Tokyo" name in connection with the registration, whereas the false advertising claim is based on an alleged statement made in the context of a commercial advertisement. Plaintiff's trademark infringement claim is based on defendants specifically seeking registration in the countries of Singapore and Vietnam where plaintiff had already registered the BENIHANA trademark under the laws of those countries. Plaintiff seeks supplemental jurisdiction allowing the court to decide these infringement issues under foreign law.

### A. Choice of Law

With respect to the contract-based and conversion claims, the court must first determine which state's law to apply before considering the parties' arguments on the merits. It is undisputed that New York law governs the ARA.[3] (D.I. 12 at 5-6; D.I. 26 at

---

[3]Section 10.06 of the ARA is entitled "Governing Law" and states:

This Agreement shall be governed by and construed in accordance with the law of the State of New York, regardless of the laws that might

5

9) As to the claim for conversion, plaintiff argues that "this case was brought in Delaware and Delaware law presumptively would apply." (D.I. 26 at 15) Plaintiff further argues that Delaware law recognizes a cause of action for a claim for conversion of intangible property. (*Id.*) Defendants argue that "Delaware filing merely means Delaware choice of law rules apply." (D.I. 30 at 3) (*citing Pa. Emp. Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010)) Defendants further argue that New York law does not recognize a cause of action for conversion of intangible property. (D.I. 12 at 10).

"'The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.' The Delaware state courts follow the conflicts of law provisions in the Restatement (Second) of Conflicts" ("Restatement"). *Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430, 434 (D. Del. 2003) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del.1991)).

Defendants assert that: (1) plaintiff is a New York corporation; (2) having its principal place of business in New York; that (3) was allegedly injured in New York; (4) based on an agreement negotiated and entered into in New York. Based on these assertions, and relying on *Callaway*, defendants argue that New York law should apply to the claim for conversion. (D.I. 30 at 3 & n.1)

---

otherwise govern under applicable principles of conflicts of laws, provided, however, that the consummation and effectiveness of the Merger shall be governed by and construed in accordance with the [Delaware General Corporation Law].

(D.I. 13, ex. 1 at 32)

6

The claim for conversion sounds in tort. "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement § 145. In determining the most significant relationship, the court must evaluate the relative importance of: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Id.* "[T]he place of injury is less significant in the case of . . . the misappropriation of trade values." *Id.* cmt f. "[T]he principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from . . . the misappropriation of trade values." *Id.*

Here, defendant Noodle Time is a Florida corporation with a principal place of business in Miami, Florida. Noodle Time retained Florida counsel to file the registration, and the certificate for the registration was returned to counsel's office in Florida. (D.I. 13, ex. 5) All of the alleged acts supporting plaintiff's conversion claim took place in Florida. Considering all the factors, and giving each factor the appropriate weight, the court will apply Florida law to plaintiff's conversion claim.

### B. Mootness

Defendants argue that "[a]ny issue with respect to [the registration] is moot since [defendants] filed [the renunciation] voluntarily denouncing protection in [the disputed countries]." (D.I. 12 at 1, 10; D.I. 30 at 2-3) In support of this argument, defendants

7

point to the court's language in its memorandum order of September 1, 2011, wherein the court stated: "If defendants truly renounced the registration and did not use the [BENIHANA trademark] outside of the territories, plaintiff has no cause of action." (D.I. 30 at 1, 2) (*citing* D.I. 25 at ¶ 7) At the same time, defendants assert that "[n]othing in the ARA restricts [BI's] ability to register the [Trademarks] outside of its defined Territory." (D.I. 12 at 3) Based on this position and the continuing ability of defendants to register the BENIHANA trademark in the disputed countries, the court reasonably infers that defendants have not **truly** renounced the registration, and that they will again seek registration of the BENIHANA trademark, or other of the Trademarks, outside the Territory. Moreover, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (*citing City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

### C. Breach of Contract

The fundamental dispute regarding the sufficiency of plaintiff's breach of contract claim is whether, under New York law, a party claiming breach of contract must allege its own performance of the contract. Both parties agree that such claim requires a plaintiff to allege: (1) the existence of a contract; (2) failure to perform by the defendant; and (3) damages resulting from the breach. (D.I. 12 at 5-6; D.I. 26 at 9) Plaintiff argues that no further allegations are necessary to sufficiently plead a claim for breach of contract under New York law and that it has sufficiently alleged each of these three elements.

(D.I. 26 at 9) (*citing Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000)). In the alternative, plaintiff argues that it has performed under the ARA, and seeks leave to further amend the complaint to add this allegation. (*Id.* at 14)

The portion of *Terwilliger* relied upon by plaintiff, however, cites to *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir.1998). *First Investors Corp.*, in turn, quotes *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir.1994) ("an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."). The court concludes that under New York law, a claim of breach of contract requires plaintiff to allege its own performance under the contract.

Defendants do not dispute the existence of a contract. (D.I. 6 at 6) Instead, defendants argue that, under their interpretation of the ARA, they have not failed to perform and plaintiff has not been damaged as a result. (*Id.* at 6-9) These arguments address the merits and not the sufficiency of the pleading. Defendants further argue that plaintiff's allegation of damages[4] is conclusory. Given all reasonable inferences, the court finds plaintiff's allegation of damages to be sufficient, based on alleged loss of exclusive rights to the BENIHANA trademark in the disputed countries. Defendants, in their reply brief, do not oppose plaintiff's request for leave to amend the breach of contract claim with respect to plaintiff's performance.[5] The court, therefore, will grant

---

[4]"The aforesaid acts of defendants have reduced the value and usefulness to BOT of the BENIHANA [t]rademark in breach of the ARA." (D.I. 6 at ¶ 30)

[5]Defendants do oppose leave to amend with regard to the false advertising claim, asserting it would be futile. (D.I. 30 at 7 n.6)

9

defendants' motion with respect to the breach of contract claim and grant plaintiff's request for leave to further amend the complaint to include allegations of its own performance.[6]

### D. Specific Performance

The amended complaint seeks assignment of the registration to plaintiff with respect to the disputed countries only, as specific performance under section 10.10 of the ARA. (D.I. 6 at ¶¶ 33-35) Defendants argue that plaintiff's request for specific performance is improper because the registration designates Cuba in addition to the disputed countries, therefore, defendants should not be required to assign the complete registration to plaintiff. (D.I. 12 at 10) Plaintiff responds by pointing out that the amended complaint did not request return of rights relating to Cuba and that a partial assignment is proper under WIPO regulations. (D.I. 26 at 14)

In addition to the jurisdictional issues raised by defendants' mootness argument discussed above, defendants argue that they "cannot assign that which [they have] expressly abandoned." (D.I. 12 at 10) Plaintiff responds that defendants have attempted to frustrate justice through the renunciation, and that the court can order defendants to reinstate the registration as to the disputed countries and assign these registrations to plaintiff ("reinstatement"). (D.I. 26 at 15) Defendants, noting that

---

[6]The court interprets plaintiff's request in its brief as a motion for leave to amend. Pursuant to Rule 15(a), leave to file amended complaints "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 309 (3d Cir. 2003); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

reinstatement has not been pled, reply that "the result would be exactly the same if the court were to do nothing at all - plaintiff would have the ability to file its applications for trademark rights in the disputed countries, just as it does today." (D.I. 30 at 3) Defendants provide no support for this assertion. As to the relief now sought by plaintiff, that clearly could not have been pled. At the time of the pleading, the renunciation had not taken place.

Defendants argue that "specific performance is inappropriate where there is no breach." (D.I. 12 at 10) The court agrees. Specific performance is a remedy sought for breach of contract, and not a cause of action in and of itself. Because the court has dismissed the breach of contract claim, an independent claim for specific performance cannot stand. The court, therefore, will grant defendants' motion as to specific performance to the extent that a claim for breach of contract has not been sufficiently pled.

### E. Declaratory Judgment

Plaintiff's declaratory judgment claim focuses on the term "Assets" as used in section 1.01 of the ARA, and whether that term is restricted to use of the Trademarks only within the Territory. (D.I. 6 at ¶¶ 61-62) Under New York law, contract interpretation requires that "the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 232 Fed. Appx. 61, 63 (2d cir. 2007) (*citing Rentways, Inc. v. O'Neill Milk & Cream Co.*, 126 N.E.2d 271, 273 (1955)).

11

Defendants argue that there is no dispute regarding what trademarks were included in the term "Assets" and, therefore, the court lacks jurisdiction under the Declaratory Judgment Act. (D.I. 12 at 17) In support of its argument that a controversy exists, plaintiff points to defendant BI's claims that "[n]othing in the ARA restricts [BI's] ability to register the [] Trademarks outside of its defined Territory. . . ." (D.I. 26 at 20) (*citing* D.I. 12 at 3)

The very essence of the dispute in this case is that each party asserts the right, under their respective interpretations of the ARA, to claim ownership of the Trademarks outside the Territory. That the amended complaint focuses on the interpretation of a specific word is of no consequence. The dispute remains the same, and the entire contract must be considered to construe even a single word. The court finds that plaintiff has adequately pled a controversy as required under the Declaratory Judgment Act and, therefore, denies defendants' motion as to the declaratory judgment claim.

### F. Conversion

As discussed above, Florida law is to be applied to the conversion claim. Under Florida law, "[a]ctions for conversion may properly be brought for a wrongful taking over of intangible interests in a business venture. Recovery properly extends to the good will of a business." *Estate of Corbin v. Corbin*, 391 So.2d 731, 732-33 (Fla. Dist. Ct. App. 1980) (internal citations and footnotes omitted). The court, therefore, will deny defendants' motion as to the conversion claim.

### G. False Designation of Origin

As discussed briefly above, under the caption of "FALSE DESIGNATION OF ORIGIN," plaintiff actually pled two distinct claims: a false designation claim at paragraphs 39-43, 48-50, and a false advertising claim at paragraphs 39, 44-50. (D.I. 6 at 8-9)

### 1. False designation claim

Plaintiff's false designation claim is predicated on defendants' allegedly deliberate use of plaintiff's name in applying for the registration. (D.I. 6 at ¶ 49) In its memorandum order of September 1, 2011, the court found that exhibit 6 of defendants' motion to dismiss (D.I. 13, ex. 6) "show[ed] that the 'Benihana of Tokyo' reference next to Noodle Time's business name is an error on the part of the USPTO and not the result of an intentional action by defendants." (D.I. 25 at 6) The court, therefore, will grant defendants' motion as to the false designation claim as defined above.

### 2. False advertising claim

Plaintiff alleges: "In marketing [their] services, defendants advertise that they have 'locations throughout the United States, Latin America and the Caribbean,'" and further that this statement constitutes a false designation under 15 U.S.C. § 1125(a), as plaintiff owns rights to the Trademarks in Mexico. (D.I. 6 at ¶¶ 44-48). Defendants interpret this to be a separate claim of false advertising under the Lanham Act. (D.I. 12 at 12) The court agrees. Defendants argue that such claim requires an allegation (in addition to literal falsity or likelihood of confusion) that the false or misleading representation involved an inherent or material quality of the product, and plaintiff failed to so allege. (D.I. 12 at 15) (citing *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93, 112 (2d

13

Cir. 2010); 15 U.S.C. § 1125(a)(1))  Plaintiff responds that defendants' paraphrasing of the statutory provision relating to materiality omitted "'geographic origin of his or her or another person's goods, services, or commercial activities.'" (D.I. 26 at 17) (emphasis removed)

There are two different theories of recovery for false advertising under § 43(a): "(1) an advertisement may be false on its face; or (2) the advertisement may be literally true, but given the merchandising context, it nevertheless is likely to mislead and confuse consumers." *Castrol, Inc. v. Pennzoil Co.*, 987 F. 2d 939, 943 (3d Cir. 1993). The test for literal falsity is an objective one for the court's determination. "[I]f a defendant's claim is untrue, it must be deemed literally false" regardless of the advertisement's impact on the buying public. *Id.* at 943-44. If the advertisement is literally false, the court may grant relief without considering evidence of consumer reaction. *See United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir.1998). "Plaintiffs are not required to offer evidence in support of materiality at this stage of the litigation." *Advanced Oral Techs., L.L.C. v. Nutres Research, Inc.*, Civ. No. 10-5303(DRD), 2011 WL 198029, at *7 (D.N.J. Jan. 20, 2011). "[O]nce plaintiff proves literal falsity of an advertisement, the court may presume all other elements of the § 43(a) claim." *Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*, Civ. No. 09-642-SLR, 2010 WL 2788240, at *3 (D. Del. July 15, 2010).

Here, plaintiff alleges that the statement was literally false, in that Mexico is outside the Territory, precluding defendants from operating in a large portion of Latin America. Plaintiff points to geographic origin as being material to the services offered. Accepting all factual allegations in the amended complaint as true and taking them in the

14

light most favorable to plaintiff, the court finds that plaintiff has sufficiently alleged a claim of false advertising. The court, therefore, denies defendants' motion with respect to plaintiff's false advertising claim.

## H. Foreign Trademark Infringement

Plaintiff urges the court to grant supplemental jurisdiction for plaintiff's claims that defendants infringed the BENIHANA trademark in Singapore and Vietnam. (D.I. 6 at ¶ 52) The amended complaint alleges that plaintiff had previously registered the BENIHANA trademark in Singapore and Vietnam and, therefore, defendants have infringed the BENIHANA trademark under the laws of those countries by filing the registration. (Id. at ¶¶51, 53-55) Defendants argue, first, that plaintiff has failed to attach copies of its registrations in Singapore and Vietnam. (D.I. 12 at 16) Defendants' remaining arguments center on actual versus threatened use, and are drawn to the trademark laws of Singapore and Vietnam. (Id. at 16-17) Plaintiff admits that defendants "have not yet infringed [the BENIHANA trademark] by opening a restaurant." (D.I. 26 at 18) Instead, plaintiff argues "[d]efendants' direct threat of infringement is a basis for this court to grant relief." (Id.) (footnote omitted).

District courts may exercise supplemental jurisdiction over all claims that are so related to claims in the action that they are part of the same case or controversy under Article III of the Constitution. See 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the

15

district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

In deciding whether to decline jurisdiction, district courts may consider the values of judicial economy, convenience, fairness, and comity. *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (citations omitted). The Third Circuit has not addressed the question of whether it is appropriate for district courts to exercise supplemental jurisdiction over infringement claims arising under the trademark laws of another country.

The Northern District of California, noting that the Ninth Circuit has similarly not addressed this issue, has at least twice decided to deny supplemental jurisdiction for a claim of foreign trademark infringement. *See Levi Strauss & Co. v. AmericanJeans.com, Inc.* ("*AmericanJeans.com*"), No. 5:10–CV–05340 JF (PSG), 2011 WL 1361574, at *2 (N.D. Cal. Apr. 11, 2011); *Levi Strauss & Co. v. Papikian Enters., Inc.* ("*Papikian*"), No. C 10–05051 JSW, 2011 WL 3739550, at *13 (N.D. Cal. Aug. 24, 2011). In *AmericanJeans.com*, the court looked for guidance to the Federal Circuit's determination that supplemental jurisdiction should not have been granted in a foreign patent infringement case. *AmericanJeans.com*, 2011 WL 1361574, at *2. "In *Voda*, the Federal Circuit reversed a district court's exercise of supplemental jurisdiction over infringement claims arising out of foreign patent law, holding that international treaty obligations, comity, judicial economy, and other exceptional circumstances constitute compelling reasons for declining to exercise that jurisdiction." *Id.* (*citing Voda v. Cordis*

16

Corp., 476 F.3d 887, 898 (Fed. Cir. 2007)). In *Papikian*, the court, noting that it was not bound by *AmericanJeans.com*, independently examined the Federal Circuit's decision in *Voda* and found a substantial correlation between the issues, thus militating against supplemental jurisdiction over foreign patent and trademark claims. *Papikian*, 2011 WL 3739550, at *12-13.

Plaintiff has cited no authority supporting the jurisdictional basis for claims of foreign trademark infringement. The court declines to exercise supplemental jurisdiction, pursuant to its authority, for reasons of international treaty obligations, comity, judicial economy, and other exceptional circumstances.[7] The court, therefore, will grant defendants' motion to dismiss as to plaintiff's foreign trademark infringement claims.

## V. CONCLUSION

For all the above reasons, defendants' motion is granted with respect to plaintiff's claims for breach of contract (including specific performance), false designation of origin (excluding false advertising) and foreign trademark infringement; the motion is otherwise denied. The court grants plaintiff leave to amend the breach of contract claim (including specific performance). An appropriate order will issue.

---

[7] The court further notes in this regard that "[f]ederal courts are courts of limited jurisdiction. . . . which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *see also Papikian*, 2011 WL 3739550, at *11.