## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| BENIHANA OF TOKYO, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civ. No. 10-1051-SLR |
| ) | |
| BENIHANA INC., and ) | |
| NOODLE TIME, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## SECOND AMENDED COMPLAINT

Plaintiff BENIHANA OF TOKYO, INC. hereby alleges as follows:

1. Plaintiff Benihana of Tokyo, Inc. (hereinafter referred to as "BOT" or "Plaintiff") is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 645 Fifth Avenue, New York, NY 10022.

2. Plaintiff is informed and believes and based thereon alleges that Defendant Benihana Inc. (hereinafter referred to as "BI") is a Delaware corporation with a principal place of business at 8685 Northwest 53rd Terrace, Miami, Florida 33166.

3. Plaintiff is informed and believes and based thereon alleges that Defendant Noodle Time, Inc. (hereinafter referred to as "Noodle Time") is a Florida corporation with a principal place of business at 8685 NW 53rd Terrace Miami, Florida 33166. Noodle Time is a subsidiary of BI.

**JURISDICTION**

4. Jurisdiction over this action is founded upon 28 U.S.C. § 1331, 1332 and 1338 because the Complaint raises a federal question, the Complaint asserts a cause of action under the federal Trademark Act, and because the Plaintiff and Defendants are citizens of different states. There is complete diversity between the Plaintiff and Defendants. The amount in controversy is in excess of $75,000.00.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

6. BOT was founded by Rocky Aoki in 1963. It owns and operates Benihana restaurants in certain territories outside the continental United States and owns intellectual property interests in the Benihana name, trademark and service mark, including but not limited to BENIHANA (hereinafter the "BENIHANA Trademark"), the flower design, and other intellectual property used in the operation of Benihana restaurants.

7. Upon information and belief, BI owns and operates or franchises a number of restaurants which are located inside the continental United States, in Central America, South America and in the islands of the Caribbean Sea, and which operate under the BENIHANA Trademark and flower design. Upon information and belief, said restaurants are licensed by Noodle Time to use the BENIHANA Trademark and flower design.

8. BOT and BI are parties to a contract titled "Amended and Restated Agreement and Plan of Reorganization," which was dated as of December 29, 1994 and amended as of March 17, 1995 (hereinafter referred to as the "ARA"). A copy of the ARA is attached hereto as Exhibit A.

9. The ARA sets forth terms and conditions of a business relationship between BOT and BI, including with regard to the BENIHANA Trademark, the flower design, and other trademarks and service marks.

10. The ARA in Subsection 1.01(d) defines "Territory" as "the United States (including its territories and possessions), Central America, South America and the islands of the Caribbean Sea."

11. The ARA provides in Section 7.10:

> **Section 7.10 Trademarks**. Each of BOT and Benihana acknowledge that, from and after the Effective Time, Benihana will own the Trademarks in the Territory and BOT will continue to own the Trademarks outside of the Territory. Accordingly, each of BOT and Benihana agree that, without the prior written consent of the other, neither will make any use of the Trademarks which could reasonably be expected to reduce the value or usefulness of the Trademarks to the other party. In addition, each of BOT and Benihana shall be responsible for the proper registration and maintenance of the Trademarks and the prosecution of infringements or potential infringements of the Trademarks in the territories where such party has an interest in the Trademarks. Each of BOT and Benihana agrees to notify the other promptly of any infringement or potential infringement of the Trademarks of which such party becomes aware and to cooperate with the other party in any action taken to prosecute any such infringement. The obligations of this Section shall survive the Closing for an indefinite period.

12. The ARA provides that BOT will own the BENIHANA Trademark, the flower design, and other trademarks and service marks outside of the defined Territory.

13. The ARA prohibits BI from making any use of the BENIHANA Trademark, the flower design, and other trademarks and service marks which could reasonably be expected to reduce the value of the same, without BOT's consent.

14. The ARA further provides that the filing of applications to register the BENIHANA Trademark, the flower design, and other trademarks and service marks in the

geographic territory outside of the United States, Central America, South America and the islands of the Caribbean Sea is a right reserved to BOT.

15. Upon information and belief, on or about April 23, 2010, BI, through its subsidiary Noodle Time, initiated with the World Intellectual Property Organization (hereinafter "WIPO"), an application for international registration of the BENIHANA Trademark. Said application was based upon U.S. Serial No. 73359594 (U.S. Registration No. 1230609), and assigned by WIPO International Registration No. 1048205.

16. The application filed with WIPO sought to register the BENIHANA Trademark in the name of "Noodle Time Inc." in several countries outside of the United States, Central America, South America and the islands of the Caribbean Sea, including Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam and Zambia.

17. In applying with WIPO for registration of the BENIHANA Trademark in Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam and Zambia, Defendants falsely suggested and asserted that it is was the owner of the BENIHANA Trademark in these countries.

18. The application filed with WIPO was filed without the consent of BOT.

19. BOT demanded that the application, insofar as it pertained to Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam and Zambia, be assigned to BOT.

20. Defendants failed to assign the application to BOT, insofar as it pertained to Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam and Zambia.

21. Upon information and belief, on or about January 28, 2011, BI, through its subsidiary Noodle Time, filed with WIPO a renunciation of the application with respect to Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam, and Zambia.

22. Upon information and belief, on or about July 5, 2010, BI, through its subsidiary Noodle Time, initiated with WIPO an application for international registration of the flower design shown below.



Said application was based upon U.S. Serial No. 72392626 (U.S. Registration No. 937781), and assigned by WIPO International Registration No. 1056172.

23. The application filed with WIPO sought to register the flower design in the name of "Noodle Time Inc." in several countries outside of the United States, Central America, South America and the islands of the Caribbean Sea, including Iceland, Iran, Monaco, Ukraine, and Zambia.

24. In applying with WIPO for registration of the flower design in Iceland, Iran, Monaco, Ukraine, and Zambia, Defendants falsely suggested and asserted that it is was the owner of the flower design in these countries.

25. The application filed with WIPO was filed without the consent of BOT.

26. Upon information and belief, on or about January 28, 2011, BI, through its subsidiary Noodle Time, filed with WIPO a renunciation of the application with respect to Iceland, Iran, Monaco, Ukraine, and Zambia.

27. Upon information and belief, on or about June 10, 2010, Noodle Time filed a

Section 7 Request (attached hereto as Exhibit B) with the United States Patent and Trademark Office ("USPTO") in regards to U.S. Serial No. 72392626 (U.S. Registration No. 937781), to reflect that the mark shown above "has been updated and modernized so that within the flower portion, there are 9 circles instead of 16."

28. In support of that request, Noodle Time purported to submit a specimen for the mark showing use of the mark in commerce by BI. This statement and all other statements made in the request were made by Noodle Time after it had been "warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements may jeopardize the validity of the application or document or any resulting registration."

29. In signing the request, Noodle Time's representative declared "that all statements made of his/her own knowledge are true; and all statements made on information and belief are believed to be true."

30. The submitted specimen did not show use of the mark by Noodle Time; rather, it was BOT's use of the flower design which was misrepresented to the USPTO as constituting use by BI. Moreover, the use described in the specimen was outside Noodle Time's defined Territory (e.g., Jakarta and Kuwait).

31. Section 1.01 of the ARA further provides:

> Section 1.01 <u>The Transfer</u>. Subject to the terms and conditions hereof at the Effective Time (as defined in Section 2.02), BOT agrees to sell, transfer and assign to Benihana (or to a wholly-owned subsidiary of Benihana designated by Benihana), all of BOT's right, title and interest in and to all assets (the "Assets") of BOT specifically related to the Restaurants (as hereinafter defined), including, without limitation, the following:

(a) all chattels, fixtures, equipment and other personal property (the "Chattels") owned by BOT and used in the operation of each of the "Benihana of Tokyo" restaurants listed on Schedule A hereto (the "Restaurants");

(b) all leasehold interests or other interests in real property owned or used by BOT in respect of the Restaurants;

(c) all liquor licenses and other permits and licenses used in the operation of the Restaurants which are transferable in accordance with applicable laws and regulations;

(d) each of the trademarks and servicemarks (the "Trademarks") listed on Schedule 1.01(d) to the extent applicable to the United States (including its territories and possessions), Central America, South America and the islands of the Caribbean Sea (the "Territory"), including all goodwill related thereto;

(e) cash and accounts receivable related to the Restaurants;

(f) the inventory of closed packages of food and beverages located at the Restaurants or centrally stored or on order for the Restaurants, subject to compliance with all applicable laws and regulations; and

(g) each of the license agreements set forth on Schedule 1.01(g) hereto and all rights related thereto.

Subject only to the representations and warranties of BOT contained herein, the Assets are to be assigned by BOT and acquired by Benihana on an "as is" basis as of the Effective Time. The business conducted by BOT through the Restaurants is hereinafter referred to as the "Business."

32. The term "Assets" as used in Section 1.01 of the ARA does not include intellectual property other than the Trademarks as defined in the ARA and listed on Schedule 1.01(d) thereto.

33. A purported "Assignment of Trademarks," dated May 15, 1995 (hereinafter "1995 Assignment") and signed by Taka Yoshimoto, who was identified as an Executive Vice President of BOT, which purported to assign specified trademarks and service marks was

recorded in the USPTO on June 21, 1995.  A copy of the recorded assignment is attached hereto as Exhibit C.

34.     Upon information and belief, Mr. Yoshimoto executed the 1995 Assignment under the direction of Darwin Dornbush (hereinafter "Dornbush").

35.     A purported "United States Assignment," dated July 31, 1998 (hereinafter "1998 Assignment") and signed by Joel A. Schwartz, who was identified as President of Benihana National Corp., which purported to assign specified trademarks and service marks was recorded in the USPTO on August 24, 1998.  A copy of the recorded assignment is attached hereto as Exhibit D.

36.     Upon information and belief, Mr. Schwartz executed the 1998 Assignment under the direction of Dornbush.

37.     Upon information and belief, at the time that the ARA was negotiated and executed, and at the time of the 1995 and 1998 assignments, Dornbush was an attorney for, and owed a duty of loyalty to, Rocky Aoki and BOT.

38.     Upon information and belief, and unbeknownst to BOT and Rocky Aoki, Dornbush has acted with an impermissible conflict of interest with respect to matters relating to BOT, including its assets and its control.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

39.     Plaintiff refers to and realleges Paragraphs 1 through 38 above as though fully set forth at this point.

40.     At all times relevant, BOT has performed its obligations under the ARA.

41.     Defendants have breached the ARA by registering the BENIHANA Trademark and flower design and claiming ownership thereof in geographic territories reserved exclusively to BOT, including Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam and Zambia.

42.     The aforesaid acts of Defendants have reduced the value and usefulness to BOT of the BENIHANA Trademark in breach of the ARA.

43.     As a direct result of the breach of contract by Defendants, BOT has been damaged and continues to be damaged in an amount not yet fully ascertainable but that will be determined at trial.

## SECOND CAUSE OF ACTION
## (SPECIFIC PERFORMANCE)

44.     Plaintiff refers to and realleges Paragraphs 1 through 38 above as though fully set forth at this point.

45.     At all times relevant, BOT has performed its obligations under the ARA.

46.     Defendants have breached the ARA by seeking to register the BENIHANA Trademark and flower design and claiming ownership thereof as its exclusive mark in the countries of Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam and Zambia in breach of the contractual prohibition against doing so.

47.     The ARA provides in Section 10.10 that irreparable damage would occur in the event that the provisions of the ARA are not performed in accordance with its terms, and that the parties shall be entitled to specific performance of the terms of the ARA in addition to any other remedy at law or equity.

48.     Upon information and belief, unless or until this court grants an order for specific

performance requiring Defendants to assign to BOT any trademark rights in Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam and Zambia, Defendants will continue to assert ownership thereof or that they have the ability to register the trademarks in these countries or elsewhere outside of its limited territory as defined in the ARA.

### THIRD CAUSE OF ACTION
### (CONVERSION)

49.     Plaintiff refers to and realleges Paragraphs 1 through 38 above as though fully set forth at this point.

50.     Upon information and belief, Defendants have converted to their ownership title to the BENIHANA Trademark and flower design in at least the countries of Iceland, Iran, Monaco, Singapore, Ukraine, Vietnam and Zambia and thereby threatened use of the BENIHANA Trademark in their own name.

51.     Unless or until this court grants an order requiring Defendants to return these trademark rights to BOT, Plaintiff is informed and believes and based thereon alleges that Defendants will not return said trademark rights, since they believe they have the ability to register the trademarks in these countries or elsewhere outside of their limited territory as defined in the ARA.

### FOURTH CAUSE OF ACTION
### (FALSE DESIGNATION OF ORIGIN)

52.     Plaintiff refers to and realleges Paragraphs 1 through 38 above as though fully set forth at this point.

53.     In marketing its services, Defendants advertise that they have "Locations throughout the United States, Latin America and the Caribbean."

54. Defendants' advertising falsely suggests that Defendants have the right to operate BENIHANA restaurants throughout Latin America.

55. Rights in the mark BENIHANA in Mexico are reserved exclusively to BOT. Mexico is located in North America and, therefore, is not in the Territory defined in the ARA. BOT is owner of Mexico trademark registration No. 888138 for the BENIHANA Trademark for restaurant services.

56. Mexico is considered to be part of the geographic area known as Latin America. Therefore, Defendants do not have right to utilize the BENIHANA Trademark and flower design throughout Latin America.

57. Defendants' aforesaid statements constitute literally false designations in violation of 15 U.S.C. § 1125(a).

58. Upon information and belief, the false designations made by Defendants were willful and intentional.

59. As a direct result of the false designations by Defendants, BOT has been damaged and continues to be damaged in an amount not yet fully ascertainable but that will be determined at trial.

**FIFTH CAUSE OF ACTION**
**(DECLARATORY JUDGMENT)**

60. Plaintiff refers to and realleges Paragraphs 1 through 38 above as though fully set forth at this point.

61. The parties have differing beliefs as to the meaning of the word "Assets" as used in Section 1.01 of the ARA, and their respective rights to register trademarks in countries

throughout the world.

62. Defendants believe that they have the ability to register the BENIHANA Trademark, the flower design, and other related trademarks and service marks in countries outside of their limited territory as defined in the ARA.

63. BOT believes that the transferred Assets include intellectual property only to the extent that they constitute trademarks and service marks listed on Schedule 1.01(d) of the ARA, and only to the extent applicable to the defined Territory. That is, BI has the right to register the BENIHANA Trademark, the flower design, and other related trademarks and service marks only in the Territory as defined in the ARA.

WHEREFORE, Plaintiff BOT prays as follows:

1. That Plaintiff BOT be awarded compensatory damages in the amount to be determined according to proof at trial;

2. For a judgment declaring that BOT is the exclusive owner of trademark rights in the BENIHANA Trademark, the flower design, and other related trademarks and service marks outside of the United States, Central America, South America and the islands of the Caribbean Sea;

3. For a judgment declaring that the only intellectual property transferred by the ARA was the trademarks and service marks listed on Schedule 1.01(d) of the ARA, to the extent applicable to the defined Territory, and the goodwill associated therewith;

4. That Defendants be enjoined and restrained during the pendency of this action and permanently thereafter from using or registering the BENIHANA Trademark, the flower design, and other related trademarks and service marks outside of the

    United States, Central America, South America and the islands of the Caribbean Sea;

5. That Defendants be enjoined and restrained during the pendency of this action and permanently thereafter from claiming that they are operating or have the right to operate locations throughout Latin America;

6. That the court order Defendants to assign whatever rights they acquired/retain in the disputed countries by filing the international applications;

7. That the court order Defendants to account to Plaintiff for all gains, profits, and advantages derived by their false designations of origin;

8. For an award of reasonable costs, expenses and attorneys fees; and

9. For further relief as the court may deem just and proper.

       /s/ *David M. Powlen*
       David M. Powlen (DE No. 4978)
       BARNES & THORNBURG LLP
       1000 North West Street, Suite 1200
       Wilmington, Delaware 19801
       Telephone (302) 888-4536
       Electronic Mail:  david.powlen@btlaw.com

       Mark R. Owens (DE No. 4364)
       BARNES & THORNBURG LLP
       11 S. Meridian Street
       Indianapolis, IN 46204
       Telephone (317) 236-1313
       Facsimile (317) 231-7433

       1000 North West Street, Suite 1200
       Wilmington, Delaware 19801
       Telephone (302) 888-4536
       Electronic Mail:  mark.owens@btlaw.com

       James R. Burdett, Esq.
       Joseph D. Lewis, Esq.
       *Admitted pro hac vice*

BARNES & THORNBURG, LLP
Suite 500
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone (202) 289-1313
Facsimile (202) 289-1330
Electronic Mail: jim.burdett@btlaw.com

*Attorneys for Benihana of Tokyo, Inc.*

- 14 -