# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BENIHANA OF TOKYO, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-1051-SLR |
| | ) |
| BENIHANA, INC., and | ) |
| NOODLE TIME, INC., | ) |
| | ) |
| Defendants. | ) |

David M. Powlen, Esquire and Kevin G. Collins of Barnes & Thornburg LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: James R. Burdett, Esquire, Joseph D. Lewis, Esquire and Mark R. Owens, Esquire of Barnes & Thornburg LLP.

Robert W. Whetzel, Esquire and Todd A. Coomes, Esquire of Richards, Layton & Finger, PA, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Alan H. Fein, Esquire and Joshua Munn, Esquire of Stearns Weaver Miller Weisler Alhadeff & Sitterson, P.A.

## MEMORANDUM OPINION

Dated: July ✐ 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On December 3, 2010, Benihana of Tokyo, Inc. ("plaintiff" or "BOT") filed this complaint comprising six causes of action: (1) breach of contract; (2) specific performance; (3) conversion; (4) false designation of origin; (5) trademark infringement; and (6) declaratory judgment. (D.I. 1 at 6-12) Plaintiff amended its complaint on December 7, 2010. (D.I. 6) On February 4, 2011, defendants Benihana, Inc. ("BI") and Noodle Time, Inc. ("Noodle Time," collectively "defendants") filed a motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 11) In lieu of a responsive brief, plaintiff filed a motion to strike/exclude (D.I. 15), which the court granted in part and denied in part.

On December 13, 2011, the court granted in part and denied in part defendants' motion to dismiss. (D.I. 32) The court granted BOT leave to amend its complaint. On January 9, 2012, plaintiff filed its second amended complaint, alleging causes of action for: (1) breach of contract; (2) specific performance; (3) conversion; (4) false designation of origin (or false advertising); and (5) declaratory judgment. (D.I. 35) Defendants denied the allegations and asserted counterclaims against BOT for breach of contract. (D.I. 61)

Following a teleconference with the court, a scheduling order was entered, setting a discovery deadline of January 24, 2014.[1] (D.I. 63) On February 14, 2014,

---

[1]According to defendants, "BOT did not seek discovery of BI and failed to produce any documents or witnesses supporting its claims or to designate any expert witnesses to support its case." (D.I. 78 at 1) Plaintiffs aver that "[t]hroughout this matter, the parties have engaged in settlement discussions [and] [a]t one point, BOT believed the parties had an agreement in principal. These discussions were the parties' focus during the discovery period." (D.I. 82 at 1)

defendants filed a motion for summary judgment. (D.I. 77) The matter is fully briefed. (D.I. 78, 79, 82, 83, 84, 86, 87) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.

## II. BACKGROUND[2]

Plaintiff is a New York corporation with a principal place of business in New York, New York. Defendant BI is a Delaware corporation and defendant Noodle Time is a Florida corporation. Both defendants have a principal place of business at the same address in Miami, Florida. Noodle Time is a subsidiary of BI.

BOT was founded by Rocky Aoki ("Aoki") in 1963 and opened its first Japanese teppanyaki steakhouse called "Benihana" in New York. The concept proved popular; by 1972 BOT owned, operated or licensed approximately 18 restaurants grossing $12 million. Several years later, Aoki formed Benihana National Corporation ("BNC"), taking the company public to raise capital. Aoki served as chairman of both BNC and privately-held BOT, retaining 51% of BNC's common stock and keeping about 30 restaurants in BOT. Later, BNC announced that it would acquire BOT's operations in the United States and rights to BOT's trademarks. Defendant BI was formed, then acquired BNC in a 1995 merger transaction ("1995 transaction"). Aoki continued to serve as chairman of BI. The 1995 transaction was governed by the "Amended and Restated Agreement and Plan of Reorganization" ("ARA").

The ARA provided for the sale, transfer and assignment of certain restaurants listed on Schedule A of the ARA, and all related assets, from BOT to BI (or to a wholly-

---

[2]Unless otherwise noted, the background is taken from the court's memorandum opinion of December 13, 2011. (D.I. 32)

2

owned subsidiary of BI). This included the trademarks and servicemarks listed on

Schedule 1.01(d) ("Trademarks") "to the extent applicable to the United States

(including its territories and possessions), Central America, South America and the

islands of the Caribbean sea" ("Territory"). Among the Trademarks listed on schedule

1.01(d) were the text "BENIHANA" ("the BENIHANA trademark") and a "flower design."[3]

Section 7.10 of the ARA further provided that

> [BI] will own the Trademarks in the Territory and BOT will continue to own
> the Trademarks outside of the Territory. Accordingly, each of BOT and
> Benihana agree that, without the prior written consent of the other, neither
> will make any use of the Trademarks which could reasonably be expected
> to reduce the value or usefulness of the Trademarks to the other party.
> In addition, each of BOT and [BI] shall be responsible for the proper
> registration and maintenance of the Trademarks and the prosecution of
> infringements or potential infringements of the Trademarks in the territories
> where such party has an interest in the Trademarks. . . . The obligations
> of this Section shall survive the Closing for an indefinite period.

(D.I. 83, ex. A at 24)

Section 10.10 of the ARA addresses specific performance:

> The parties hereto agree that irreparable damage would occur in the
> event any of the provisions of this Agreement were not to be performed
> in accordance with the terms hereto and that the parties shall be
> entitled to specific performance of the terms hereof, in addition to any
> remedy at law or equity.

(*Id.* at 32)

On or about April 23, 2010, BI, through its subsidiary defendant Noodle Time,

filed a first application with the World Intellectual Property Organization ("WIPO")

seeking to register the BENIHANA trademark in Iceland, Iran, Monaco, Singapore,

---

[3]"The word 'Benihana' is translated as 'red flower.'" (D.I. 32 at 2, n.1)

3

Ukraine, Vietnam and Zambia. (D.I. 83 at ¶ 14; D.I. 27 at ex. 7; D.I. 79 at ex. 1) This application was assigned registration no. 1048205.

On July 5, 2010, BI, through its subsidiary defendant Noodle Time, initiated a second WIPO application for registration of the Benihana flower design. (D.I. 83 at ¶ 15; D.I. 27 at ex. 9; D.I. 79 at ex. 1) The application was assigned registration no. 1056172 and sought to register the flower design in several countries, including Iceland, Iran, Monaco, Ukraine and Zambia. (*Id.*)

On January 28, 2011, BI, through its subsidiary defendant Noodle Time, submitted a "Request for the Recording of a Renunciation" with WIPO, renouncing registration of the Benihana flower design trademark in the disputed countries.[4] (D.I. 25 at 3; D.I. 79 at ex.1) In February 2011, BI, through its subsidiary defendant Noodle Time, filed a "Request for the Recording of a Renunciation" with WIPO, renouncing registration of the BENIHANA trademark in the disputed countries. (*Id.*)

According to general counsel for BI ("Mendoza affidavit"), the registrations have been renounced and BI "will not pursue international registration of trademarks rights in the countries located in BOT's Territory as defined in the ARA." (D.I. 79, ex.1 at ¶ 5) In a March 13-14, 2014 email exchange between counsel, the issue was further discussed, as follows:

> BOT: This will confirm BOT's intention to file a motion for leave to amend the complaint in order to add the remedy of seeking rescission of the ARA. As we discussed, this is based on BI's continuing position that it has the right to file in countries outside of its defined Territory. Indeed, Ms. Mendoza's affidavit merely states that BI "will not pursue international

---

[4]Approximately three months prior to the second renunciation, plaintiff filed the complaint at bar against defendants. (D.I. 1)

registration of trademark rights in the countries located in BOT's
Territory as defined in the ARA." This would not foreclose BI from filing
national applications in those countries. . . .

BI: . . . The parsing you came up with is half-again too clever. Ms.
Mendoza referred to an "international registration" because
that was what was filed, and that was what the case was
purportedly about. But, let me make this more clear, if indeed it
could be more clear: As you well know, BI will not file international
applications, and it will not file national applications. It will not file
applications in BOT's Territory. It has not and will not register in
BOT's Territory. It has not and will not use in BOT's Territory. . . .

(D.I. 87 at ex. 2)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of

demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact

cannot be – or, alternatively, is – genuinely disputed must demonstrate such, either by

citing to "particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those

made for the purposes of the motions only), admissions, interrogatory answers, or other

materials," or by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has

carried its burden, the nonmovant must then "come forward with specific facts showing

that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation

5

marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## IV. DISCUSSION

Defendants have moved for summary judgment on all claims that survived the motion to dismiss: (1) breach of contract; (2) specific performance; (3) conversion; (4)

6

false designation of origin (or false advertising); and (5) declaratory judgment.[5] (D.I. 78) In its opposition to the motion, however, plaintiff seeks to "simplify this dispute and conserve judicial and party resources" by focusing "on the heart of the parties' dispute: BOT's breach of contract claim, request for a declaration of its rights, and request for equitable relief, including injunctive relief." (D.I. 82 at 2) Plaintiff's failure to address and defend the specific performance, conversion and false designation of origin (or false advertising) claims constitutes abandonment. *See Convoy v. Leone,* 316 Fed. Appx. 140, 144 n. 5 (3d Cir. Mar. 9, 2009) ("We find this undeveloped argument has been waived."); *Blakeman v. Freedom Rides, Inc.*, Civ. Action No. 12-416-LPS-CJB, 2013 WL 3503165, at *13 (D. Del. July 10, 2013); *Glover v. City of Wilmington*, 966 F. Supp.2d 417, 428 (D. Del. 2013). Accordingly, the court turns to plaintiff's remaining causes of action.

## A. Breach of Contract

Defendants contend that summary judgment is warranted because plaintiff cannot demonstrate a breach of the ARA. (D.I. 78) There is no language in the ARA that prohibits BI from registering trademarks for the protection of both parties, nor any proscription against applying for such registration. Rather, the ARA specifically prohibits the "use" of the trademarks: "neither [party] will make any 'use' of the Trademarks which could reasonably be expected to reduce the value or usefulness of the Trademarks to the other party." (D.I. 83, ex. A at § 7.10) (emphasis added) Further, defendants argue

---

[5]In light of neither party moving for summary judgment on defendants' counterclaims, the court will consider the claims moot.

7

that plaintiff cannot demonstrate any proof of damages sustained as a result of the purported breach.

In response, plaintiff asserts that defendants' acts of applying for registration of the trademarks constitutes "use" and, consequently, a breach of the ARA. The ARA employs "use" in a general and broad fashion whereby any disputes over interpretation create an issue of material fact that would preclude summary judgment. Moreover, plaintiff avers that, under the ARA, proof of breach constitutes proof of damages whereby a showing of actual damages is unnecessary. (D.I. 82 at 14)

Under New York law,[6] an action for breach of contract requires proof of: (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir. 1994). It is well-settled that "[t]he fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639 F.3d 63, 69 (2d Cir. 2011) (*quoting Klos v. Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997)). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 569 (2002).

Where there is a dispute over the meaning of a contract, "the threshold question is whether the contract is ambiguous." *Lockheed Martin,* 639 F.3d at 69. "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *JA Apparel Corp. v. Abboud,* 568 F.3d 390, 396 (2d Cir.2009). Whether a contract is

---

[6]The court has previously determined that New York law governs the breach of contract claim. (D.I. 32 at 5; D.I. 83, ex. A at § 10.06)

8

ambiguous is a question of law for the court. *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.,* 595 F.3d 458, 465 (2d Cir.2010).

It is well-settled that a contract is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin,* 639 F.3d at 69. "[A] written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms, without the aid of extrinsic evidence." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.,* 595 F.3d at 467 (internal quotations and citations omitted). In such circumstances, courts should "read the integrated contract as a whole to ensure that undue emphasis is not placed upon particular words and phrases, and to safeguard against adopting an interpretation that would render any individual provision superfluous." *Id.* at 468. "In interpreting a contract under New York law, words and phrases . . . should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 206 (2d Cir.2005). "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.,* 595 F.3d at 468 (internal citations omitted). "[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Id.* (internal quotations omitted).

9

A contract is ambiguous, however, "if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context" of the entire agreement as a whole. *Lockheed Martin,* 639 F.3d at 69. "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation" unless each is a reasonable interpretation. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989). Moreover, courts should not find the contract language to be ambiguous where such an interpretation urged by one party would "strain the contract language beyond its reasonable and ordinary meaning." *Bethlehem Steel Co. v. Turner Construction Co.,* 2 N.Y.2d 456, 459 (1957). Where the contract language creates ambiguity, "extrinsic evidence as to the parties' intent may properly be considered." *JA Apparel,* 568 F.3d at 397 (citation omitted). "Where there is such extrinsic evidence, the meaning of the ambiguous contract is a question of fact for the factfinder." *Id.* (citations omitted).

Considering this authority, in light of the record evidence and parties' submissions, the court finds that defendants' registration of the BENIHANA Trademark and flower design does not constitute a breach of the ARA. It is undisputed that defendants filed applications with WIPO for international registration of the shared BENIHANA Trademark and flower design in certain countries. And it is clear that defendants renounced the applications and never obtained any trademark rights in the subject countries.[7] There is nothing, however, in the ARA that prohibits defendants from

---

[7]By affidavit and correspondence, defendants have foresworn any intention of pursuing future registrations in the subject countries. (D.I. 79 at ex. 1; D.I. 87 at ex. 2)

registering Trademarks or for applying for such registrations.  Rather, the ARA
specifically precludes "use" of the Trademarks:  "neither [party] will make use of the
Trademarks which could reasonably be expected to reduce the value or usefulness of
the Trademarks of the other party."  (D.I. 83 at 24, § 7.10)  While plaintiff argues that the
term "use" should be broadly construed to include "registration," the court concludes
that, in the context of the entire contact, the plain meaning of "use" is unambiguous and
does not encompass "registration" or "attempts to register" Trademarks.  Plaintiff has not
presented any evidence (extrinsic or otherwise) to support its supposition that "use" is
ambiguous and applies to registration or attempted registration of the Trademarks.

        Similarly, plaintiff has failed to demonstrate another element required for a breach
of contract claim, damages.  *See Vann v. Home Ins. Co.*, 733 N.Y.S. 2d 13, 14 (N.Y.
App. Div. 2001) (summary judgment is appropriate where plaintiff has suffered no
damages).  Rather than producing evidence of specific damages to refute the motion for
summary judgement, plaintiff relies on its conclusory contentions and suggests that,
under the ARA,  proof of breach also demonstrates proof of damages.  (D.I. 83 at 10-14)
There is nothing, however, in the language of the ARA to suggest that a breach of
contract does not require proof of damages.

        Moreover, plaintiff's attempt to demonstrate reduction in value of the Trademarks
by referencing a letter by defendants' counsel is unpersuasive.  The conduct described
in counsel's letter involved a third party's "use" of the Trademarks in a restaurant that
was operating in Montreal, Canada and impermissibly using the Benihana name.  (D.I.
67, ex. B) Conversely, the conduct at bar alleges "use" by "registration" by co-owners of
the Trademarks.  It stands to reason that such registration by either plaintiff or

                                                11

defendants (both co-owners of the Trademark) would preserve, not diminish, the value of the Trademarks as it would preclude any use by a third-party.

## B. Declaratory Judgment

In its second amended complaint, plaintiff requests that the court issue a declaratory judgment as to the parties' "respective rights to register trademarks in countries throughout the world." (D.I. 35 ¶¶ 60-63) Plaintiff asserts that such a declaration of rights will prevent defendants from seeking registrations outside their Territory. (D.I. 82) Defendants contend that summary judgment is warranted on this claim because there is no current conflict between the parties since the trademark registration applications were withdrawn, and defendants have expressly stated that they will not pursue registrations outside the Territory.

The Declaratory Judgment Act, 28 U.S.C. § 2201, "creates a remedy by which federal courts may declare the rights and other legal relations of any interested party seeking such a declaration when there is a case of actual controversy." *Brockstedt v. Sussex County Council*, 794 F. Supp.2d 489, 499 (D. Del. 2011). "The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A plaintiff bringing an action for declaratory judgment must prove, by a preponderance of the evidence, that an actual controversy exists. *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp.2d 606, 609 (D. Del. 2009).

12

Given the foregoing, the court finds that plaintiff has failed to carry its burden regarding the existence of an actual controversy. It is undisputed that the trademark registration applications have been withdrawn and counsel for defendants has unequivocally renounced any intention to seek registration of the trademarks in other Territories. Likewise, there has been no showing of any conduct by defendants that is detrimental to plaintiff nor any proof of damages resulting from the registrations submitted in 2010.

## C. Injunctive Relief

In the second amended complaint, plaintiff sought injunctive relief to stop defendants from using the BENIHANA Trademark and flower design in certain areas and to enjoin defendants from operating in certain locations. (D.I. 35 at 12-13) In its opposition to the motion for summary judgment, plaintiff adds that, under § 10.10 of the ARA, "irreparable damage would occur in the event of any of the provisions of the ARA" that were not performed. (D.I. 82 at 14)

Defendants counter that plaintiff has not presented any proof of irreparable harm resulting from the purported breach of the ARA. Relying on the bare provisions of § 10.10 to prove irreparable harm is insufficient under New York law. *Life Techs Corp. v. AB Sciex Pte. Ltd.,* No. 11-cv-325 (RJH), 2011 WL 1419612, at *5 (S.D.N.Y. Apr. 11, 2011).

"The decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Jayaraj v. Scappini,* 66 F.3d 36, 38 (2d Cir. 1995). The moving party for injunctive relief

13

has the burden of showing: "(1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of the hardships tilting decidedly towards the plaintiff." *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 916 (2d Cir. 1986); *Markovits v. Venture Info Capital, Inc.,* 129 F. Supp.2d 647, 661 (S.D.N.Y. 2001). .

Applying this authority to the record at bar, the court finds that plaintiff has not presented any evidence to warrant the extraordinary relief requested. Simply, there has been no affirmative demonstration of irreparable harm.

## V. CONCLUSION

For all the above reasons, defendants' motion for summary judgment is granted. An order will issue.

14